## WYLIE W. DUKE v. THE STATE.

### No. 24. Decided March 3, 1909.
### Rehearing Denied January 18, 1911.

**1.—Murder—Actual and Apparent Danger—Charge of Court—Threats.**

Where, upon trial of murder, the evidence showed communicated threats by deceased, followed by acts manifesting an intention to execute the same at the time of the homicide, the case was one of apparent danger and the court should not have charged upon actual danger.

**2.—Same—Statutes Construed—Apparent Attack—Force.**

The logical effect of Article 713, Penal Code, is to justify homicide upon the ground of apparent danger if from such apparent danger the defendant has a reasonable apprehension of death or serious bodily injury created by such threats coupled with the act mentioned in the statute; and he may continue shooting his adversary until he kills him, if to him as viewed from his standpoint it reasonably appears necessary to save his own life or to prevent serious bodily injury; and it is reversible error to charge the jury in a case where the evidence raises the issue of apparent danger that defendant must repel force with force, which implies an actual attack.

**3.—Same—Charge of Court—Abandonment of Difficulty.**

Where, upon trial of murder, the evidence showed that the defendant either shot the deceased as he was running from him or while deceased was trying to get his gun to shoot defendant, the issue of abandonment of the difficulty was not raised and it was error to instruct the jury thereon.

**4.—Same—Going Armed—Demanding Explanation—Peaceable Manner.**

Where, upon trial of murder, the evidence showed that from the threats of the deceased the defendant had the right to arm himself and to demand of deceased an explanation, it was error to instruct the jury that the defendant must approach deceased in a peaceable manner for the purpose of arriving at a friendly understanding of their differences. Following King v. State, 51 Texas Crim. Rep., 208, and other cases.

**5.—Same—Memorandum.**

Where the matter is a public memorandum, counsel for defendant should have access to it.

**6.—Same—Evidence—Threats.**

Where, upon trial of murder, the threat, if any, by the defendant was very indirect and did not name the deceased, such testimony was not admissible.

Appeal from the District Court of Collin. Tried below before the Honorable J. M. Pearson.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Abernathy, Abernathy & Abernathy,* for appellant.—Upon question of the court's charge on actual attack and failure to charge on apparent attack: Phipps v. State, 34 Texas Crim. Rep., 560, 31 S. W. Rep., 397; Terry v. State, 45 Texas Crim. Rep., 264, 76 S. W. Rep., 928; Stewart v. State, 51 S. W. Rep., 907; Poole v. State, 45 Texas Crim. Rep., 348, 76 S. W. Rep., 565; Seeley v. State, 43 Texas Crim. Rep., 66, 63 S. W. Rep., 309.

*F. J. McCord,* Assistant Attorney-General, for the State, filed a motion for rehearing March 11, 1909.

DAVIDSON, Presiding Judge.—Appellant was allotted a term of five years in the penitentiary upon a conviction of murder in the second degree.

The evidence shows that he killed Light R. Cheney. The killing occurred near a little store in the village of Peel Town. The deceased had made threats to take the life of appellant. On the morning of the tragedy appellant had an understanding with Russell to go on a visit to McKinney. The first understanding was, that appellant was to walk through a near-way to the residence of Russell, or to some designated point to meet him, and accompany him to McKinney. His proposed line of travel would carry him near the residence of the deceased. He called Russell over the phone and changed their meeting place to the little store where the tragedy occurred. This change was made to avoid a possible meeting with deceased. It seems from the testimony that the deceased, being on the same telephone line, overheard this conversation and immediately hitched his horse to his buggy, and went to the little store, taking his shotgun with him. Arriving at or near the store he left his horse unhitched a few steps south of the front end of the store, alighted from the buggy and went into the store and inquired if appellant had been there. Being informed in the negative he went out upon the gallery, but soon went back into the store and made the purchase of some tobacco. When this was done, he returned to the gallery and sat down upon the outer edge of it with his feet upon the ground. Not long after this appellant entered the store and seeing the deceased upon the gallery, walked to the door and asked him if he had said he was going to kill him on sight. According to the testimony of Russell, deceased started to his buggy and arriving there reached for his gun. As he did so, appellant fired and deceased fell, dropping his gun. Immediately upon falling, he got on his all-fours, and secured the gun and in this position, or as he was straightening up, appellant fired the second shot. Deceased ran down the road some distance and fell. Two ladies by the name of Rutledge testify in the case. One of them was in the store and waited upon the deceased when he bought the tobacco and made the inquiry as to whether or not appellant had been to the store that morning. The other was in the back part of their residence,

some distance to the rear of the store, ironing, and upon hearing the first shot, went to the front of the house and saw deceased going down by the side of the fence or down the road; and, as far as she could tell, with his right hand hanging down by his side; at least, her testimony goes to show that she did not see him with the gun, and that it was about this time the second shot was fired. This, while brief, is, perhaps a sufficient statement of the evidence to review the questions thought necessary for discussion.

1. The application for continuance is not discussed in view of the disposition of the case upon other matters. The absent witnesses can be secured upon another trial.

2. The court gave the stereotyped definition of malice, and murder in the first and second degrees. In regard to that portion of the charge on murder in the second degree which defines mitigation, excuse or justification, the court gave this charge: "Every person is permitted by law to defend himself against any unlawful attack, reasonably threatening injury to his person, and is justified in using all the necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack, made in such a manner as to produce a reasonable expectation or fear of death, or some serious bodily injury." Exception is reserved to this because it confined the justification, or self-defense theory, in connection with the charge on murder in the second degree, to, first, an unlawful attack, and, second, that that unlawful attack must be a violent one. We are of opinion that this criticism is correct. There had been no real attack made. The deceased, under the facts, when he saw appellant at the store immediately started to his buggy for the purpose of securing a gun, and as he reached for the gun or as he got hold of it, appellant fired. These acts had not reached the point of a real or violent attack. Of course, appellant had reason to believe from these actions of the deceased that he intended to get the gun for the purpose of using it upon him, but it was more apparent than real, legally speaking. In the following subdivision of the charge, the court in applying the law to murder in the second degree, also limited the defensive theory to an actual attack as he did in applying the law of manslaughter. As we understand the facts, the question of actual danger was not the criterion of the defensive theory, but it was one of apparent danger. The same criticism is urged, and we think correctly so, in regard to subdivision twenty-one where the court undertakes to define the danger as being real and actual. The law of apparent danger was the law of this case.

3. The twenty-fourth subdivision of the charge is criticised for several reasons. This charge submitted the theory of abandonment of the difficulty, and omitted to charge the jury in that connection as to the right of appellant to continue to shoot as long as danger appeared to him to be present. In said subdivision the court charged the jury that

if they should find from the evidence that prior to the killing, deceased had made threats against the life of appellant, and that he used words or did acts which indicated a purpose or intention to carry such threats into execution; and if they should find that deceased started to his buggy for the purpose of securing his gun and that he got the gun; and they should further find that it appeared to appellant that deceased was about to attack him, and he (defendant) shot and wounded deceased, and the jury should so find that said wound was not mortal, and should further find that when deceased was first wounded, he dropped his gun and abandoned the difficulty in good faith and commenced to retreat; and further that, after deceased had dropped his gun, abandoned the difficulty in good faith, and began to retreat, that defendant shot a second time and thereby killed deceased; and they should further believe from the evidence that when he shot the deceased the second time, it reasonably appeared to him that deceased had dropped his gun and had abandoned the difficulty in good faith and had begun to retreat; and it further appeared to defendant, that he was in no actual or apparent danger, then he, defendant, was not justified in shooting the second time under this state of circumstances, but if he did so shoot under the circumstances above mentioned that he would be guilty of manslaughter. The testimony is very slight in regard to abandonment, even if the question was suggested by the facts. If the question was suggested by the testimony it was from that given by one of the ladies by the name of Rutledge who testified that she saw defendant moving down the road with his right hand down by his side just prior to the second shot. All the testimony shows that deceased's gun was lying in the road south of the house; that it had been taken from the buggy, or at least, it had gotten out of the buggy in some way and was on the ground. It may be seriously questioned whether the doctrine of abandonment was suggested by the testimony, but if it was, then appellant's criticism of the charge to the effect that the court should have instructed the jury, under the testimony, that if deceased got the gun for the purpose of shooting him (appellant) and that his life was in danger, that he had the right to shoot and continue to shoot until the danger had passed. The close proximity of the facts, the rapidity of the whole transaction, from beginning to end, makes the question of abandonment with the omission of the other phase of the charge, to wit, appellant's right to shoot and continue to shoot until the danger was past, very harmful. The two shots were very close together. If deceased had gotten his gun from his buggy or was in the act of getting it when the first shot was fired, and this caused him to drop his gun when he fell, and in getting up he reached for the gun, appellant's right to shoot was certainly unabridged. If the deceased, in getting up, was in the act of leaving the gun, the occurrences were so close together that the charge on abandonment, without the charge omitted, was of serious consequence. Unquestionably the omission by the court to charge with reference to

the right of appellant to continue to shoot was harmful under the facts in the record. The omission of this charge, viewed in the light of the charge on abandonment, made said omission more harmful. In regard to the abandonment of the difficulty, we would suggest upon another trial, if the facts are developed as in this record, such a charge should not be given.

4. There was reserved an exception to the manner of interrogating the witness Russell and using some notes of the testimony of Russell before the grand jury of which appellant complained. When this occurred, and the testimony before the grand jury was in the hands of the prosecuting attorney and was being used by him for the purpose of laying a predicate to contradict the testimony of Russell, appellant's counsel requested that they be permitted to use the same book in which the notes were taken, to the end that they might cross-examine the witness. This was more than a mere private memorandum of counsel, but was a record and statement signed by the witness. This was refused at the time. The court, however, qualifies this by stating that subsequently when the witness was recalled he was not asked about it. If this matter should occur upon another trial, it is but just and fair that appellant's counsel should have access to the book in developing the matter inquired about by the prosecuting attorney.

5. There was also some rather indefinite evidence introduced from one witness in regard to a conversation he had with appellant in regard to a telephone line, and in which the State sought to prove a sort of an indirect general threat in regard to parties using the telephone line, growing out of something that was not exactly to appellant's liking. We are of opinion, as the matter is presented that the exception was well taken. The threat, if any, was very indirect and did not name the deceased. If this testimony is sought to be used upon another trial as criminative of appellant, the connection should be made plainer; at least, it should be made sufficiently plain to include the deceased within the purview of appellant's statements.

6. The matters mentioned in regard to the last two exceptions are rather remote and not of great significance but should be avoided upon another trial, unless they are of more consequence than exhibited by this record.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

#### January 18, 1911.

DAVIDSON, Presiding Judge.—At a former term of this court the judgment herein was reversed and remanded. The Assistant Attorney-General has filed a motion for rehearing alleging error in the former opinion. He bases it upon two grounds: First, in holding that the charge of the court below limited the defense to an actual

attack when the proof showed that the defendant's theory was that he shot in defense of himself against an attack about to be made. Second, in holding that the court below failed to charge the jury that the defendant had the right to continue to shoot as long as it was apparent to him that he was in danger. At first blush the former opinion, when read alone, without reference to the entire record, would seem to be subject to the latter criticism. The conclusion heretofore reached by this court and now adhered to is, that the question of actual attack by deceased is not in the case, while that of apparent danger arising from the threatening acts of the deceased at the time of the homicide together with the threats of the deceased against appellant prior to the homicide, is the only theory upon which appellant sought to justify the homicide. It follows, therefore, that the lower court ought not to have instructed upon actual danger in any form, but should have confined the defensible question to that of apparent danger arising from the acts of the deceased at the time of the homicide, coupled with and viewed in the light of his previous threats against the life of appellant. Threats having been made by deceased to take the life of appellant, and these threats having been communicated to appellant, and having been followed by deceased at the time of the homicide by acts manifesting an intention to execute such threats, the law makes it apparent danger, and if, under such circumstances, appellant, having a reasonable apprehension of such danger, shot and killed the deceased Chaney, he would be justified. There is no evidence in the record of an actual attack. Our statute, article 713 of the Penal Code, is very broad, and perhaps unique, and reads as follows:

"When a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the offense unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threats so made."

The legal as well as the logical effect of this statute is to justify the homicide upon the ground of apparent danger if from such apparent danger the defendant has a reasonable apprehension created by such threats coupled with the act mentioned in the statute. Under such circumstances the defendant is not bound to retreat, nor is he required, so long as danger from the deceased appears to him imminent, to stop shooting until he shall have killed his adversary, if to him, as viewed from his standpoint, it reasonably appears necessary to save his own life or to prevent serious bodily injury. Under this statute and the circumstances therein mentioned, he is not limited in his right to *"repel force with force."* This term *"force with force"* implies an *actual attack* and excludes the idea of apparent danger. It can only apply where the danger is actual. Therefore, when the court instructed the jury as in paragraph 20 of its charge, it went beyond the law. That paragraph is as follows:

"A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and from no other, and in such case the party acting under such real or apparent danger, is in no event bound to retreat in order to avoid the necessity of killing his assailant, but he has the right to stand his ground and *repel force with force,* till it reasonably appears to him from *his standpoint* that he was out of danger."

The vice of this paragraph is in the words "his assailant" and "repel force with force." These words imply an actual attack and real danger. They do not apply to apparent danger. The only theory presented by the testimony, and that relied upon by appellant, is that the danger was apparent, and that the deceased was doing an act manifesting an intention to execute his threat to take the life of appellant. Upon another trial this paragraph should be given the correction pointed out. This was in the mind of this court when its former opinion was rendered. With this correction the former opinion will stand.

We further emphasize the fact that the question of "abandonment of the difficulty" is not in this case and the lower court is instructed upon another trial to omit that question from its instructions to the jury. Appellant either shot deceased as he was running from him, as indicated by the testimony of Miss Rutledge or he shot him both times, for he fired two shots while deceased was trying to get his gun out of the buggy. The testimony of Miss Rutledge would indicate that the deceased had made no attack real or apparent upon appellant, but was running from him. The testimony of Russell was that deceased had reached his buggy and was trying to get the gun when appellant fired, and that he staggered back or fell, and recovered sufficiently to again try to reach his gun when appellant fired the second shot. This, in connection with the threats made by deceased to take the life of appellant, furnished the ground for reasonable apprehension of danger, and a manifestation on the part of deceased to execute his threat. Under no view of the case would abandonment of the difficulty be shown or disclosed by the evidence.

Again, in the twenty-third paragraph of the court's charge this language occurs: "and so armed, he would also have had the legal right to have approached Light R. Chaney *in a peaceable manner,* for the purpose of arriving *at a friendly understanding and adjustment* of their differences, if any." Chaney was the name of the deceased party. There was evidence of the fact that appellant was armed, and had approached Chaney and asked him about his previous threats, etc. This charge is not the law. This character of instruction has been heretofore condemned by this court in King's case, 51 Texas Crim. Rep., 208; McCleary v. State, *57 Texas Crim. Rep., 139,* and other cases.

The doctrine was clearly laid down in Shannon v. State, 35 Texas Crim. Rep., 2. That case has been followed in all subsequent cases. Under certain circumstances the defendant has the right "to arm himself, seek his adversary, and demand an explanation." The law does not require this to be done *in a peaceable manner* and for the purpose of arriving *at a friendly understanding.* This must depend upon the circumstances of the particular case. In this case, however, the facts do not call for such a charge. Here the undisputed evidence shows that up to the time of the meeting with Chaney on the morning of the difficulty appellant had been seeking to avoid him. He was not seeking him for the purpose of having any kind of understanding. In fact, the meeting seems to have been, so far as appellant is concerned, unintentional and accidental. On the contrary, the testimony shows that Chaney had armed himself and was seeking the defendant for the purpose of carrying out his threat to take the life of appellant, which threat had been communicated to appellant. Under such circumstances the appellant had the right to arm himself, and when he and deceased met at the store the defendant had the right to demand of him his purpose in making such threats, and to know the truth of the statements made to him concerning such threats. When a man's life is threatened and his adversary is hunting him with a shotgun with the apparent purpose of executing such threats, the law does not require the threatened party to approach in a *peaceable manner* for the purpose of having a *friendly understanding and adjustment* with the party thus threatening his life. It is true, however, that the law does not permit a man whose life is threatened to attack his adversary simply because of such threats when such threats are unaccompanied by some act manifesting an intention to execute the same, but it does permit him to arm himself as a protection against such threatened injury, and it does permit him, if he be in doubt as to the truth of such threatening language, to inquire as to the truth without in any way impairing his right of self-defense. The lower court, therefore, is instructed upon another trial of this case to conform the charges to the views herein enunciated.

The motion for rehearing is overruled.

*Overruled.*