## A. QUINN v. THE STATE.

### No. 3255. Decided October 28, 1914.

### Rehearing denied November 25, 1914.

**1.—Manslaughter—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of manslaughter, the evidence sustained the conviction, there was no reversible error.

**2.—Same—Newly Discovered Testimony—Cumulative Evidence—Want of Diligence.**

Where, upon trial of murder and a conviction of manslaughter, the alleged newly discovered evidence was cumulative in its character, and the record further showed a want of diligence in discovering the same before trial, there was no error in overruling a motion for new trial on that ground.

**3.—Same—Self-defense—Right to go Armed—Provoking Difficulty.**

While the rule is that the defendant has a right to seek his adversary and demand an explanation, under appropriate circumstances, and to arm himself against any probable attack, yet, where he seeks the deceased for the purpose of killing him or bringing on a difficulty with him by which he may be killed or inflict serious bodily injury, or to provoke him into a difficulty

for the purpose of doing either, he can not invoke the doctrine of self-defense. Distinguishing Duke v. State, 61 Texas Crim. Rep., 19. Following Shannon v. State, 35 Texas Crim. Rep., 2, and other cases.

**4.—Same—Newly Discovered Evidence—Want of Diligence.**

Where the alleged newly discovered evidence was to the effect that deceased had rented a pistol on the day of the homicide and prior to the tragedy and had gone about the city in an auto hunting the defendant, and this was known, or could have been known to defendant, and there was a total want of diligence on the part of the defendant to ascertain whether or not deceased did in fact rent a pistol, etc., there was no error in overruling his motion for new trial on that ground.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. Robt. G. Street.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*John L. Darrouzet,* for appellant.—On question of right of going armed and insufficiency of the evidence: Andrus v. State, 165 S. W. Rep., 189; Duke v. State, 61 Texas Crim. Rep., 19, 133 S. W. Rep., 432.

On question of newly discovered evidence: Dunham v. State, 3 Texas Crim. App., 465; Bullock v. State, 12 id., 42; Lensey v. State, 50 Texas Crim. Rep., 435; Johnson v. State, 51 id., 605; Weaver v. State, 52 id., 11; Prater v. State, 60 id., 88; Spencer v. State, 69 Texas Crim. Rep., 92, 153 S. W. Rep., 858; Black v. State, 71 Texas Crim. Rep., 621, 160 S. W. Rep., 720.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of manslaughter, his punishment being assessed at three years confinement in the penitentiary.

Two questions are presented, first, the insufficiency of the evidence to support the conviction; second, newly discovered testimony. We do not think there is any merit in the first proposition. These parties had been at enmity, each making threats against the other; both armed themselves the day of the killing. It is in evidence that the deceased made threats against the life of appellant, and also that appellant made threats against the life of deceased. This is the conclusion to be reached from the evidence, without stating it in full.

Within an hour of the killing, appellant walked into the saloon of Habine and was informed by Habine, his brother and others, that deceased had been in the saloon shortly before and had made threats against him. He borrowed a pistol from Habine and left. Shortly afterward he came upon deceased on the corner of a street. A conversation began by appellant stating to deceased he understood he had been looking for him. Deceased replied, "Yes, I understand you have been looking for me," and struck appellant with his fist; they "clinched." When pulled apart appellant had his pistol, snapped it once or twice,

and either the second or third time it was discharged, inflicting the fatal wound. The testimony is not altogether harmonious at what time deceased pulled his pistol or attempted to pull it. Appellant introduced evidence to the effect that the deceased was pulling or seeking to pull his pistol before he pulled his. When deceased fell he had his pistol in his hand, or if not it had just been taken from him by an officer. Evidently the State's idea was, that the trouble arose between them on account of a prostitute with whom appellant had been living prior to the homicide, but had for a month or two not lived with her, but that deceased was keeping her as his mistress at time of difficulty. They were engaged to be married, and she was going to rectify her life by moving from Galveston to Houston and become, as she says, a better girl. This case borders closely upon mutual combat, under circumstances that meant a deadly conflict.

As to the newly discovered testimony, affidavits are appended to the motion, in substance, that deceased had hired an auto and chauffeur to carry him about the city in search of appellant. The chauffeur had been discharged shortly before the meeting. We do not think there is anything in this phase of the motion. Appellant was thoroughly informed of the fact that deceased was seeking him and had threatened his life. Acting upon this information he armed himself and went to where the deceased was located. If the witness had been present at the time and introduced before the jury, this testimony would have been admissible as intensifying the fact that deceased had been looking for appellant, but appellant fully knew that fact prior to the killing. This was in the nature of cumulative evidence, and a matter of no very material importance, as we understand this record. Appellant was informed and knew of the threats, and that deceased intended to kill him and was seeking him for that purpose.

The other phase of the motion was, in substance, that deceased had gone to a pawn-shop before driving in the auto and rented a pistol. This affidavit and the motion shows that deceased had rented this pistol from the pawn-shop for twenty days, paying ten dollars for it. It is claimed that this is newly discovered and material. It would have been admissible testimony, but it is far from clear from the record that appellant was in position to take advantage of that as newly discovered testimony. The witness by whom they expected to prove this was a witness and present at the trial and was not asked in reference to the matter. Qualifying the bill in this respect the court says: "It is cumulative of the testimony of other witnesses who testified upon the trial." No witness, however, in the case testified to the fact that deceased had leased the pistol. From the witness Pearl Brooks, upon cross-examination, the defendant elicited the following: "Q. Now then, Pearl, didn't you, on the day of the killing, on that morning, furnish to Mr. Smith money to buy him a six-shooter? A. No, sir; I didn't. Q. Didn't you give him ten dollars? A. No, sir. Q. Didn't Mr. Smith buy a six-shooter on the morning of the killing, from a pawn-shop in the City of Galveston? A. If he did, I don't know about it;

I didn't give him ten dollars, and as to Mr. Smith never paying me back the ten dollars, I didn't give him the ten dollars to pay me back. He had money; he made thirty-five dollars that night and I got half of it." By this witness threats were proved by the defendant against the deceased. It will be noticed by this statement that defendant on cross-examination of the woman Pearl Brooks, who had been appellant's former mistress, proved that she was then the mistress of deceased; that she did not let deceased have the ten dollars to buy a pistol or get one from the pawn-shop. He asked her particularly if she had not let him have the money to get it from the pawn-shop. From this appellant must have been aware of the fact that deceased got the pistol from the pawn-shop, or believed it, as he asked particularly in reference to that very matter. Ten dollars was the exact amount deceased paid the pawn-shop for the pistol. If he knew or believed that deceased had been hunting him over the town, ordinary diligence would have required him to inquire at the different pawn-shops whether or not deceased had gotten this pistol. There is no evidence connected with the motion for new trial or in the statement that he had gone to any pawn-shop to ascertain this fact, and yet he developed on the trial by cross-examination of the witness Pearl Brooks that he knew or believed the fact that deceased had gotten the pistol from the pawn-shop and had paid ten dollars for it. Under this statement we do not believe this case is brought within any of the rules which would require the court to grant a new trial. It is sometimes the case that justice may require granting a motion for new trial where the matters are not brought strictly within the rules in regard to newly discovered testimony, but we are of the opinion that this is not one of those cases. Appellant was apprised, if his examination of the witness Pearl Brooks means anything, of the fact that deceased had leased the pistol from some pawn-shop and had paid ten dollars for it, because he was inquiring of this witness if she had not furnished deceased the money. As soon as the trial was over and conviction had, he discovered this quickly, and from one of the witnesses who was used on the trial. Now the fact that deceased had leased the pistol from the pawn-shop could have had but little bearing upon the real merits of the case. Appellant's personal testimony is to the effect that he was afraid the deceased would kill him; that they had had previous difficulties. Taking the case all in all we do not believe this testimony comes within even any equitable rule that would require the court to grant a new trial or this court to reverse for failure to grant a new trial. This seems to be one of those cases where the two antagonists threatened each other, both apparently willing to enter into a deadly conflict, both armed for this purpose, with some intimation that appellant sought the deceased. We are of the opinion, therefore, the court did not err, and this judgment ought to be affirmed, and it is accordingly so ordered.

*Affirmed.*

November 25, 1914.

DAVIDSON, JUDGE.—We have examined this record in connection with the motion for rehearing and still are of the opinion that the facts are sufficient to support the conviction for manslaughter. It is unnecessary to review the facts. The criticisms of the opinion selects a few expressions here and there instead of taking it in its entirety. For instance, the motion makes this statement: "In the opinion rendered by the honorable judge in this case he states 'both armed themselves the day of the killing.' We respectfully refer the court to the case of Duke v. State, 61 Texas Crim. Rep., 19, in 133 S. W. Rep., 432, p. 435, in which the court says: 'Defendant, whose life has been threatened, has a right to arm himself and to shoot if attacked and his so doing does not deprive him of self-defense.'" The quotation from the Duke case is the law, but not applicable here. The facts in this case are unquestionably proved by the defendant's witnesses that he armed himself upon being informed of the fact that deceased had threatened him and was hunting him, and it is made incontrovertibly to appear that deceased was armed. Of course the defendant has a right to seek his adversary and demand an explanation under appropriate circumstances, and to arm himself against any probable attack. At this late day this proposition would not be questioned. But there are different ways by which one antagonist may seek another. If he seeks him for the purpose of killing him, or bringing on a difficulty with him by which he may be killed, or inflicts serious bodily injury, or to provoke him into a difficulty for the purpose of doing either, he can not invoke the doctrine of self-defense. He has a right to go to his adversary and demand an explanation, and if the adversary attack him, his right of self-defense may not be compromised. This question was fully discussed and decided in Shannon v. State, 35 Texas Crim. Rep., 2. Appellant rather loses the point of this legal proposition, if there was any merit in it from his viewpoint, by this statement: "We will admit that the question of self-defense was not raised in this case." If the law of self-defense was not in the case, or if the facts did not raise the issue of self-defense, the doctrine above invoked by him in the Duke case and Shannon case, and that line of cases, is not applicable. The issue of self-defense must be in the case in some way to invoke any proposition applicable to the law of self-defense. It is not the purpose of this rehearing opinion to go into the merits of the testimony, or to discuss the doctrine of the Duke case.

We reviewed the question of newly discovered testimony in the former opinion and deem it unnecessary to discuss it. The question of threats made by the deceased seems not to have been controverted, at least it was amply proved, and the fact that deceased armed himself was known to appellant, and to meet these matters appellant armed himself and shortly afterwards found the deceased. The fatal difficulty then oc-

curred. It seems that the proposition mainly relied upon in the trial court, in reference to newly discovered testimony, was not a legal but an equitable one as contended in the original brief. The newly discovered testimony, if it had been before the court, was to the effect that deceased had rented a pistol on the day of the homicide and prior to the tragedy, and had gone about the city in an auto hunting appellant. This was known to appellant, or could have been evidently from the testimony, which is sufficiently collated in the original opinion, and the witnesses by whom these facts could have been proved were at the trial, and one of them testified that deceased wanted to borrow money from her with which to rent a pistol or buy it. Appellant, of course, was then apprised of the fact, and it became his duty at once to investigate these matters. There seems to be a direct want of diligence on his part to follow up this matter, to ascertain whether or not deceased did in fact rent a pistol from a pawn-shop.

Believing there is no real merit in the application, the motion for rehearing is overruled.

*Overruled.*