### Rube Dollar v. The State.

No. 5578.　Decided December 3, 1919.

**1.—Pandering—Evidence—Conversation of Third Parties.—Harmless Error.**

Where, upon trial of pandering, the State's theory was that defendant was keeping and was the propritor of a house of ill-fame, and that he attempted to procure and was concerned in procuring a certain female to become an inmate thereof, there was no reversible error to admit testimony that a conversation occurred between a certain woman and another party in the lobby of said house in an undertone, about going into a room in said house and that she did not know whether defendant heard this conversation as this testimony was admissible to show that defendant was keeping a house of ill-fame, the evidence further showing that said woman was a prostitute and occupied one of the rooms pointed out by said third party in said house for that purpose, and at the most the admission of this testimony was harmless error; besides the bills of exception were insufficient.

**2.—Same—Evidence—Conversation—Third Party.**

Where, upon trial of pandering, the evidence showed that the woman alleged in the indictment to have been induced by defendant to become an inmate in a house of ill-fame under his control, left and went to another place because her baby was ill, there was no error in admitting in evidence a conversation which occurred between the owner of the second place and the defendant who went there to secure the return to his place of said female, the defendant being in such position that the witness heard the conversation; besides, the testimony was admissible to show that defendant was there to induce the said female to return to the house of ill-fame.

**3.—Same—Evidence—Circumstances—Motive.**

Where, upon trial of pandering, the evidence showed that the defendant enticed a female to enter his house of ill-fame, there was no reversible error in admitting testimony that this female left said house of ill-fame to secure better attention of her sick infant, and while this was not of particular moment, the question was whether defendant sought to induce her to return to the house of ill-fame.

Appeal from the District Court of Potter. Tried below before the Hon. Henry S. Bishop, judge.

Appeal from a conviction of pandering; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Pearson & Monning*, for appellant.—On question of admitting declarations of third parties: Barbee v. State, 4 S. W. Rep., 584; Day v. State, 62 Texas Crim. Rep., 448, 138 S. W. Rep., 130; Nichols v. State, 75 Texas Crim. Rep., 67, 170 S. W. Rep., 304; Sorrell v. State, 74 Texas Crim. Rep., 100, 167 S. W. Rep., 356; Funk v. State, 208 S. W. Rep., 509.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—On question of admitting conversation of third parties: Renfro v. State, 82 Texas Crim. Rep., 343, 199 S. W. Rep., 1096; Currington v. State, 72 Texas Crim. Rep., 143, 161 S. W. Rep., 478.

DAVIDSON, Presiding Judge.—Appellant was given fifteen years in the penitentiary under a charge of pandering.

In substance, the State's case is that appellant was keeping and was the proprietor of a house of ill-fame, and that he attempted to procure and was concerned in procuring Fannie Doty, a female person, to become and be an inmate of a house of ill-fame and prostitution, in which said house of ill-fame and prostitution, prostitutes and lewd women were then and there permitted to resort and reside for the purpose of plying their vocation as prostitutes. It is further shown that Fannie Doty was an inmate of his house at his instigation and procurement; that he permitted men to make "dates" with other women than Fannie Doty and occupy rooms and have sexual intercourse with them in his house, which was known as the Star Hotel. It is also shown that he permitted other women to meet men in his house, and that he would furnish them rooms and other accommodations. It is also shown that the house was a house of ill-fame, and that such was its general reputation. Some of the witnesses testified it was a "whore house" and others that such was its general reputation. Appellant denied that he procured Fannie Doty or any other woman to visit his house and occupy a room with men. The testimony is voluminous.

A bill of exceptions recites that while Mrs. Maggie A. Graham was testifying for the State, and when she had testified that she had a conversation with a man known as the "cripple-footed fellow" in the lobby of the Star Hotel, and after she had testified that she had a conversation with this man in an undertone, the conversation being about her going to a room in the hotel, and after she further testified that the defendant was in the lobby but that she did not know whether he heard the conversation or not, she was asked

this question: ''You don't know that he heard it? A. I don't know that he heard it.'' The ground of objection is thus stated: ''Because it was not shown that the conversation was heard by the defendant, or that he had knowledge of it, and, therefore, could not be binding on the defendant.'' The objections being overruled, she testified that the ''cripple-footed fellow'' had directed her to a room in the Star Hotel. The grounds of objection are not statements of fact.

The following bill of exceptions recites that while the same witness was testifying for the State, and ''had undertaken to testify as to particular acts of intercourse with men in the Star Hotel, and while she was testifying as to a conversation between herself and a man known as 'the cripple-footed fellow,' she was asked this question by the defendant: 'You don't know that he heard it? A. I don't know that he heard it' '' The objection urged in this bill is that the defendant could not be bound in any way by particular acts of intercourse which occurred in the Star Hotel without his knowledge or connivance, and that such evidence was not competent evidence to prove appellant's guilt. These objections being overruled, the witness testified that the ''cripple-footed man'' directed her to a room in the Star Hotel, and that she there had intercourse with a man. These grounds of objection, as stated in reference to the other bill, do not constitute a statement of facts. The bill is too meager perhaps for consideration, but in any event we are of opinion this testimony was admissible. Appellant was the proprietor of the hotel. The entire house, including the rooms, was under his control, and if Mrs. Graham occupied a room in the hotel, under the circumstances, it occurs to us it should be considered as a fact going to show appellant was keeping a house of ill-fame where prostitutes plied their vocation. The fact that he may or may not have heard what the ''cripple-footed fellow'' said to Mrs. Graham in the lobby of the hotel would be of no serious moment, she having occupied the room pointed out in the hotel. If this bill could be aided by going to the statement of facts it would be discovered that Mrs. Graham was a prostitute. Her testimony, as well as the testimony of others render this an indisputable fact. She went to this hotel, under her testimony, to meet a man and ply her vocation, and did so in a room in the hotel. We do not think this was a matter of sufficient importance to require a reversal, even if appellant did not hear the conversation between the ''cripple-footed fellow'' and Mrs. Graham which led her to occupy a room in the house and to ply her vocation. She testified at considerable length, and was sharply cross-examined. Not only Mrs. Graham herself, a woman beyond middle life and a mother of thirteen children, testified that she occupied a room, but one or more of her daughters plied the same vocation in the same hotel by meeting men and occupying rooms in the hotel. Her testimony was legitimate to show the character of the house and that the business of prostitution was carried on in it.

Fannie Doty, the woman alleged in the indictment to have been induced to follow her business in appellant's house, after remaining there for some time left and went to the home of a Mr. Lackey. It seems she left the hotel because her baby had pneumonia. Appellant objected to a conversation that occurred between Mrs. Lackey and appellant when he went to Lackey's house to secure the return of Fannie Doty to his house. The bill recites that Fannie Doty did not see the defendant at the time and the conversation occurred between Mrs. Lackey and appellant, but the court certifies in his qualification that the witness had testified at that time that she was about six feet from Mrs. Lackey and appellant, but out of sight of appellant in another room, with an open door between witness and appellant and Mrs. Lackey, and that she heard the conversation between them that she testified about. This would be a sufficient predicate, we think, to admit the conversation, whatever it may have been, if it had any bearing upon the case; but it was a fact that he visited the Lackeys in order to induce this woman to return to his house, and whether Fannie Doty heard the conversation or not we think would not be of any particular moment. He went to the Lackeys to secure Fannie Doty's return to his house, and if the conversation was to that effect, or that he desired to see her for that purpose, it would be admissible, under the allegations of the indictment. She had been an inmate of his house, and had left, and his visit to her at the Lackeys to secure her return would be a relevant fact.

Appellant also objected to the statement of Fannie Doty that when she left the hotel her child was sick with pneumonia. This is not an important matter one way or the other. Whether she left the hotel for one reason or another would be admissible as a sort of predicate for the further statement that he went to the Lackeys in order to induce her to return. If she left because the child might secure better attention at some other place, or if she left because she concluded to change her manner of life, would not be of pertinent force, except as an inducement to appellant seeking her with a view of inducing her return. The fact would remain that she left the place, and her reason may or may not be of any particular moment; but the fact that she did leave, and that appellant sought to induce her to return would be legitimate and relevant. We are of opinion that the evidence is sufficient to support the conviction.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*