# OCTOBER 28, 1936

## W. M. BANKS v. THE STATE.

No. 17988. Delivered June 24, 1936.
Rehearing Denied October 28, 1936.

The opinion states the case.

*Dibrell, Mosheim & Campbell* and *Knetsch, Stevenson & Knetsch*, all of Seguin, for appellant.

*R. A. Weinert*, District Attorney, of Seguin, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, fifteen years in the penitentiary.

That the death of deceased resulted from a pistol shot fired by appellant, is not disputed, but in his unusually able brief appellant urges that the facts do not support a verdict of guilty of murder with malice. That a contention had arisen between appellant and deceased over certain land and the crops grown thereon, is not controverted; nor is the fact that appellant had placed on part of said land as his tenant one Martin, who was with appellant at the time of the shooting. Deceased had denied Martin the right to cut certain rent corn. Martin reported this to appellant, and the two then went together in the car of appellant to the home of deceased, where the killing took place. Martin corroborated appellant's version of the fatal difficulty. They agreed that appellant urged upon deceased that they settle their differences without trouble, and that deceased said he was going to get his gun and settle it, and walked into the house; that appellant then walked around his car, opened the door of same, and took from the pocket of the car his pistol, and stationed himself near the end of the car, and when deceased came out of his door with a shot gun in his hand, held in a shooting position,—appellant fired over the hood of the car, striking deceased and killing him. The wife of deceased was the only other eye-witness to the killing. She swore, in substance, that soon after Martin and appellant reached her home she heard appellant say to deceased: "I will turn you out, too," and he also said "You won't get anything you make on the Mose Miller place." Deceased replied: "The law will do that," and appellant pulled out a six-shooter. Deceased ran into the house and got his shot gun. Appellant got

over behind his car and kind of hid himself, and watched the door, and when he got a glimpse of deceased shot him down.

The credibility of these witnesses and the weight to be given their testimony was for the jury, and we can not agree that if the jury saw fit to accept the testimony of the State, it was not enough to support the verdict. We note that Martin was asked on cross-examination if he had not told Constable Neill that on their way out to the home of deceased appellant offered him one of his guns. Martin denied this. Mr. Neill then took the stand and swore that Martin did tell him that on the evening of the shooting on their trip out to the home of deceased, appellant asked him whether he had a gun, and offered him one of his. Martin also denied telling the sheriff of the county that on their way out to Miller's the evening of the shooting appellant told him he had some dirty work to do and wanted him, Martin, to witness it. The sheriff took the stand and testified that Martin did make such statement to him. Martin also denied having told a man named Wilson on the streets of Seguin he had had a quarrel with appellant, and if he told the truth about how this shooting occurred, appellant would get about sixty years in the penitentiary. Wilson took the stand and swore that Martin did so state to him.

Appellant's bill of exceptions No. 1 consists of two pages of questions and answers, and states "To which questions and answers appellant objected and excepted." There is no certificate by the court that it was necessary that the questions and answers be set out in order to make the bill understood. We can not consider such a bill of exceptions.

Appellant's bill of exceptions No. 2 sets out his objection to a purported dying declaration. The dying declaration is set out and the testimony of one witness, but neither in the bill of exceptions nor elsewhere do we find any certificate of the trial court that there were not sufficient facts before the court justifying the admission of the dying declaration. Almost times without number this court has held that a statement of grounds of objection in a bill of exceptions is not tantamount to a certificate of the court that the objection made is well founded. Williams v. State, 67 Texas Crim. Rep., 590; Brown v. State, 57 Texas Crim. Rep., 269; Vann v. State, 84 Texas Crim., 97; Rippey v. State, 86 Texas Crim. Rep., 539; Dollar v. State, 86 Texas Crim. Rep., 333; Fowler v. State, 89 Texas Crim. Rep., 623; Viley v. State, 92 Texas Crim. Rep., 395; Newton v. State, 94 Texas Crim. Rep., 288, and see other

authorities cited by Mr. Branch in Sec. 1864 of his Annotated P. C.

Bill of exceptions No. 3 complains of the refusal of appellant's motion to strike out the dying declaration. The motion is set out in the bill, but is not accompanied by any showing of facts which would justify the court in granting such motion.

Bill No. 5 was taken to the refusal of a special charge seeking to have the jury told not to consider the dying declaration of deceased unless he was of sane mind, conscious of approaching death, etc., etc. We find no showing of any attack in testimony upon the sufficience of the predicate for the admission of such dying declaration, and in such condition of the record the special charge was not called for, but was properly refused. Highsmith v. State, 41 Texas Crim. Rep., 38; Connell v. State, 45 Texas Crim. Rep., 161; Ward v. State, 159 S. W. Rep., 277. We seem to have uniformly held that proper objections to dying declarations must be made when the evidence is offered, and that in the absence of such objections the necessity for submission of the issue of the sufficiency of the predicate arises only in cases where evidence combats such sufficience or predicate or raises some substantial doubt thereof. Yarbrough v. State, 95 Texas Crim. Rep., 36; Johnson v. State, 86 Texas Crim. Rep., 566. As we understand this record, appellant offered no testimony combating the sufficiency of the predicate, and the testimony showing that deceased was at himself and conscious of approaching death when he made and signed the dying declaration, there was no need for the court submitting the issue.

We are still of the same opinion as when we wrote in Crutchfield v. State, 10 S. W. (2d) 119, regarding the matter contained in appellant's complaint in his bill of exceptions No. 6 of the refusal of a special charge seeking to have the jury told that it was their duty to consider all the facts and circumstances in evidence. When nowhere in the charge is there any limitation of the jury's right to so consider all the facts and circumstances, such charge as requested would seem an idle gesture.

Bill of exceptions No. 7 brings forward appellant's objection to proof of a conversation had with defense witness Martin, the objection being that there was an effort to impeach the witness on an immaterial matter. We do not regard as immaterial the fact, if it be such,—that on the evening of the homicide and while on their way to the home of deceased, appellant asked Martin if he had a gun, and offered to loan him one of

his. Martin had been asked about this and denied it. The witness affirmed, over objection, that Martin did so state to him.

Appellant's fourth bill of exceptions complains of the charge on self-defense as follows:

"The defendant excepts and objects to said charge because in the charge defining self-defense, it abridges the right of the defendant because it requires the jury to find that 'the deceased was advancing upon him with a gun in his hands in a threatening manner,' because the law only requires the jury to find that defendant so believed the case to be when viewed from his standpoint alone."

Evidently the charge must have been amended, for examination thereof discloses a specific instruction that the matter must be viewed from the standpoint of the defendant alone. In the same bill appellant also excepts to the charge and all those parts of same on the law of provoking a difficulty, as an abridgement of his right of self-defense. We are of opinion that the question of provoking a difficulty was in this case. Appellant and another went to the home of deceased, and, according to the State's testimony, appellant declined to answer when deceased spoke civilly to him twice; then standing by his car in front of the yard gate of deceased, who was inside the yard, appellant said to deceased "I want to speak to you," and when deceased walked out to the car appellant said something to him so low the witness could not hear, but further said to deceased "I will turn you out, too," and then also said "You won't get anything you make on the Mose Miller place," to which deceased replied, "The law will do that," whereupon appellant pulled out a pistol and deceased ran into his house and got his gun, and while deceased was so doing appellant went around his car and kind of hid himself, but watched the west door * * * and as quick as he got a glimpse of deceased, shot him down. These facts speak for themselves and need no argument or discussion at our hands. Whether the above was true and the real version of what took place, was for the jury.

In said bill appellant also excepted to that part of the court's charge on provoking a difficulty, which is as follows:

"You are further instructed as a part of the law as set forth in the next two preceding paragraphs of this charge, that the defendant had the right to go to the house of the deceased on the occasion of the homicide for the purpose of seeking an amicable adjustment of their differences relative to the Mose Miller land, or the crops grown thereon for that year; and, if

he feared an attack upon him by deceased, he had the right to arm himself before going to deceased's home, for the purpose of protecting himself from any such anticipated attack; and his right of self-defense would not in any manner be cut off or abridged for thus acting."

The exception was because of the use of the word "Amicable," claiming that the use of this word abridged his rights. In appellant's brief, all of which has been examined with interest and care, he cites as supporting this point Shannon v. State, 35 Texas Crim. Rep., 6, 28 S. W., 687; Airhart v. State, 40 Texas Crim. Rep., 470, 51 S. W. Rep., 214; King v. State, 51 Texas Crim. Rep., 210, 101 S. W., 237; Duke v. State, 61 Texas Crim. Rep., 19, 133 S.W. Rep., 432, and Sorrell v. State, 169 S. W. Rep., 299. We might content ourselves with the general statement that each of these cited cases sufficiently differentiates itself on its facts from the case at bar, which is true. In Shannon's case, supra, no question relative to the charge arose, and the case was reversed on its facts, this court holding that same did not show that defendant sought the deceased with any intent to provoke a difficulty. We do note, however, that the charge given in the Shannon case told the jury that if the accused requested an interview in a friendly spirit, to settle a difficulty, and killed in self-defense, he would be justified. There is not a suggestion of criticism of such charge in the opinion of this court. The Airhart case, supra, reflects facts showing that the accused was informed of insulting language used by deceased concerning him, and, according to appellant's own testimony on his trial, he went to see deceased to get him to take back what he said, if he said it, and intending to make him take it back, and if he would not take it back, to have a "Fist and skull" fight with him. While this seems to evidence the fact that the accused did not claim to have sought the deceased upon a peaceful mission, we note what is said in the opinion as follows:

"As stated, the court gave a charge on self-defense, but, in connection with that charge, gave a charge on provoking a difficulty, and also, in the same connection, instructed the jury on the right of appellant to go and see deceased on a peaceful mission with reference to the remarks he had heard deceased had made in regard to him. This was in accordance with the doctrine announced in Shannon v. State, 35 Texas Crim. Rep., 2."

There was no criticism of this charge in the opinion of this court, but the case was reversed upon another error.

In the King case, supra, there was no evidence that the accused went to the store of deceased in a friendly spirit, but wholly to the contrary. He had said of deceased that the latter intended to rob him by removing his goods and not paying a debt which he owed King, and if deceased did this he was going to kill him. The proof showed that the accused and another went to the store of deceased, and the accused said to deceased "What did you tell Will White?" and called deceased a damn liar and shot him. The above was not controverted by the testimony for the accused who only claimed that when he called deceased a damn liar, deceased got a knife and was coming toward the accused when the latter shot him. The charge given in said case had in it many errors, among others, the court said that the accused had the right to visit the store of deceased in a friendly spirit * * * and "If you believe from the evidence that the defendant visited the place of deceased in a friendly spirit to settle a difficulty or misunderstanding between them * * * and under these circumstances shot and killed deceased upon real or apparent danger * * * the killing would be justifiable." Under the facts this court held that such a charge was wrong, there being no testimony raising or calling for a charge which in effect denied the accused any submission of his right of self-defense.

In the Duke case, supra, whose facts showed without dispute that Duke had tried to avoid one C, but the latter overheard Duke talking over a party phone line telling one R that he was going to McKinney, but did not want to come by R's house because it would take him near the house of deceased, who had made threats to kill him, Duke. When deceased heard this conversation over the phone, he got his shot gun and went to a store near which Duke would pass, according to his conversation with R, and sat down on the porch of the store, his gun being in his buggy near by. Duke came through the store presently, and seeing deceased on the porch, asked him if he had threatened to kill him, and deceased ran to his buggy and reached for his gun, at which point Duke shot. The court told the jury as follows: "And so armed, he would also have had the legal right to have approached deceased in a peaceable manner, for the purpose of arriving at a friendly understanding and adjustment of their differences, if any." Judge Davidson, citing the Shannon case, supra, says:

"Under certain circumstances the defendant has the right 'to arm himself, seek his adversary, and demand an explanation.' The law does not require this to be done in a peaceable

manner and for the purpose of arriving at a friendly understanding. This must depend upon the circumstances of the particular case. In this case, however, the facts do not call for such a charge. Here the undisputed evidence shows that up to the time of the meeting with Chaney on the morning of the difficulty appellant had been seeking to avoid him. He was not seeking him for the purpose of having any kind of understanding. In fact, the meeting seems to have been, so far as appellant is concerned, unintentional and accidental. On the contrary, the testimony shows that Chaney had armed himself and was seeking the defendant for the purpose of carrying out his threat to take the life of appellant, which threat had been communicated to appellant. Under such circumstances the appellant had the right to arm himself, and when he and deceased met at the store the defendant had the right to demand of him his purpose in making such threats, and to know the truth of the statements made to him concerning such threats. When a man's life is threatened and his adversary is hunting him with a shotgun with the apparent purpose of executing such threats, the law does not require the threatened party to approach in a peaceable manner for the purpose of having a friendly understanding and adjustment with the party thus threatening his life."

Nothing could be plainer than that such a charge as given by the court did not fit the facts before the jury.

In the Sorrell case, supra, the opinion was written by a special judge, and adds no weight to appellant's authorities. We have discussed these cases because we think the proper disposition of appellant's contention under the facts of this case and the wording of this charge, is to hold that no error was committed. The law of every case is made by and depends on its facts. Appellant testified on this trial that on two prior occasions he had gone to see deceased, and had talked over their differences, and had had no trouble; that Martin, appellant's tenant, had reported to him that deceased had told him not to cut certain corn. Appellant said in testimony "So I went out that day to see Miller and talk with him, and to tell him not to interfere with any order that I give Martin * * * I stopped my car about twenty-five feet from the gate. * * * I blew my horn, and he came out. * * * I opened the door and got out of my car and spoke to him. * * * I told him I came out to get an understanding about the crops and what was my part." On cross-examination appellant testified "No, sir, I did not go out there expecting to shoot him; I went out to talk

peaceably. I carried my gun in my car for protection. I wasn't looking for trouble, and I didn't anticipate any."

As said, in effect, by Judge Davidson in the Duke case, whether such charge as we are discussing is proper, depends on the circumstances of the particular case. The facts in this case thus showing that appellant did go to Miller's house seeking an amicable adjustment of their differences, the court's instruction above quoted was applicable and simply told the jury that appellant had the right to go to said house for such purpose, and that his right of self-defense would not in any manner be cut off or abridged for so acting. In other words, the court below said to the jury: Mr. Banks claims that he went to see Miller in an effort to bring about an amicable adjustment of their differences. He had the right to do this, and if he feared an attack upon him by Miller, he had the right to arm himself before going to Miller's house, and his so arming himself would in no manner cut off or abridge his right of self-defense. As we view the matter, there is nothing in appellant's contention.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant insists that our disposition of his bills of exception numbers two and three was erroneous. Bill number two brought forward complaint of the introduction of a dying declaration which was objected to upon various grounds set out in the bill. Later counsel for appellant by written motion requested the court to withdraw said dying declaration from the jury, the request being based upon the same grounds urged against its introduction in the first instance. Complaint at the refusal of the court to withdraw the declaration is brought forward in bill number three. It is urged here that the predicate for admitting the dying declaration was insufficient. The court having admitted it the presumption prevails that his ruling was correct unless it is shown to the contrary in the complaining bill. In Branch's Ann. Tex. P. C., Sec. 1864, is found the following:

"A bill of exception taken to the supposed error in admitting proof of a dying declaration without laying the proper predicate to be sufficient must contain, *and state it contains,* all the predicate laid upon which the declaration was admitted, and must also set out the declaration."

Authorities are cited supporting the text. Practically the same rule is stated in Tex. Jur., Vol. 4, Sec. 225, p. 329, with citation of supporting authorities. In Hill v. State, 88 Texas Crim. Rep., 179, 225 S. W., 521, Judge Davidson states the rule in these words:

"A bill of exception will be held insufficient when taken to supposed error in admitting evidence of a dying declaration without laying the proper predicate, and, to be sufficient, it must contain and state that it does contain all the predicate laid upon which the declaration was admitted, and must further also set out the declaration."

In Elliott v. State, 111 Texas Crim. Rep., 534, 15 S. W. (2d) 648, the Hill case was followed. Other later cases were noted in Elliott's case. We now call attention to the still later cases of Downing v. State, 113 Texas Crim. Rep., 235, 20 S. W. (2d) 202; Moore v. State, 78 S. W. (2d) 189. There is an entire absence from bills of exception numbers two and three of any statement that they contain all of the predicate laid for admitting the dying declaration. For this reason as well as those stated in our original opinion we think the bills fall short of presenting error.

The second ground urged in appellant's motion for rehearing is that the trial court committed error in charging on provoking the difficulty, and that we were in error in holding that the issue was in the case. Appellant's contention on this point has made it necessary to again review the testimony, which has been done. It is true appellant's evidence does not raise the issue, but we think the State's testimony well warranted the trial court in submitting that subject to the jury.

We have read with interest appellant's complaint of our original opinion disposing of the criticism of the trial court's instruction on the issue of self-defense, and in connection therewith have re-examined the charge on that subject given by the court. In view of appellant's testimony and that of his witnesses the charge criticized appears to have been a pertinent application of the law. After a most careful re-examination of the question we can not bring ourselves to agree with counsel for appellant that there was a failure in the instruction to apprise the jury that in passing upon the issue of self-defense the matter must be viewed from appellant's standpoint.

Believing the case was properly disposed of originally, appellant's motion for rehearing is overruled.

*Overruled.*