## Jimmy C. Henderson v. The State.

No. 23209. Delivered January 9, 1946.
Rehearing Denied February 20, 1946.

The opinion states the case.

*Chas. Owen,* of El Paso, for appellant.

*Roy D. Jackson,* District Attorney, and *Gil L. Newsom,* Assistant District Attorney, both of El Paso, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the murder with malice of his wife, Pearl Farris Henderson, and awarded a penalty of fifty years in the penitentiary, from which he appeals.

It is evident from the facts that appellant and his wife lived on a ranch in Jeff Davis County. On November 14, 1943, two soldiers from the army, together with two Mexican girls, with whom they had been out on the road all night, came to the Henderson home early in the morning, and were welcomed by the Hendersons. They early began drinking beer, and during the day a trip was made to a nearby town and two quarts of Waterfill and Frazier whisky were obtained and brought back to the Henderson home. This was consumed, and eventually some words were passed between appellant and the deceased, appellant finally appearing with a shotgun, which the deceased grasped and same was broken in the struggle that ensued, deceased falling on her face on the floor, where she remained a short time. Appellant then possessed himself of two Derringer 41 caliber pistols, which were in another room, and returning shot the deceased in the back, near the backbone, the bullet lodging beneath the skin near the navel, saying at the time "Damn you die." The soldiers then took the deceased, who still lived, and put her in a car in order to take her to a hospital. In the meantime deceased's father, a 74-year-old man, approached appellant with a 45 pistol, and threatened to kill him; they engaged in a scuffle over the pistol and fell to the floor, and while on the floor this pistol was fired twice. Appellant arose from the floor but Mr. Farris remained down. Appellant then took this pistol and fired at Farris' head, saying "You are too damned old to live," and shot him in the head and caused his death. He then took this same pistol out to the car where his wife was, and, pointing it at her, snapped the same, it failing to fire, saying "I want to kill you, you s - o - a - b?"

It was shown that all parties seemed to have been under the influence of liquor, and there had been some disagreements between appellant and his wife during the day, evidenced by some harsh language, the witnesses being rather vague as to what actually transpired, but the above is a fair resume of the State's testimony.

Bill of exceptions No. 1 arose as follows: About a year after the above occurrence one of the soldier witnesses was taken before the district judge, and, on account of the nearness of his departure overseas, it was agreed and stipulated in writing that he would be sworn and examined and his testimony taken down and reduced to writing, in the presence of appellant, and same was offered and read to the jury in this case at a later date, this being done by agreement of all parties, and no objection being taken as to the introduction of such transcribed testimony It appears that objections to certain portions of this transcribed testimony were made at the time the testimony was taken, and while same was being read to this jury the following appears in the bill, as shown by said transcribed testimony:

"Q. And where did he shoot her? To what part of her body was the gun pointing when he fired the shot? A. When he fired the shot I don't know where the gun was aiming."

Thereupon the district attorney asked:

"Q. 'Now, I want to know, immediately after he fired the first pistol, where did he point the other pistol?' A. 'I don't know.'

"Q. 'I wish to call your attention to the language in this statement that you made the next day: 'then he pointed the other pistol at her and snapped it several times, then he pointed it in a different direction from her body and shot.' 'Now Pearl was lying face down on the floor when he shot her?' "

This action of the district attorney in calling the witness' attention to a statement made by the witness on the day after the homicide was objected to on the ground that same was an attempt upon the part of the State to impeach its own witness, was hearsay, and had the effect of presenting to the jury an ex parte statement made out of the presence of the defendant. The court's qualification to this bill shows the surprise of the State relative to the testimony of the witness on the particular matter in question and the admission of such question as a refreshing of the memory of the witness. The bill itself, we think, is defective in that the answer of the witness does not appear therein. But be that as it may, we do not think any error is evident from the quoted proceedings, it also being evident that the witness had previously, on the day after the tragedy, gone into the details of the shooting, which he was failing to do at this trial, and as evidenced by his further testimony, the proceeding above outlined did assist him in remembering details about which he first seemed to be lacking in his recollection. To the same effect

is bill No. 2, and in neither bill is it shown that the State introduced this ex parte statement, but that it only used such statement to refresh the witness' memory. We see no error evidenced in either bill. See Art. 732, Vol. 2, Vernon's Ann. C. C. P., and authorities there cited.

Bill of exceptions No. 3 relates to the introduction of a statement made by the deceased on the morning after she had been shot the evening or afternoon before, such statement being testified to by Sheriff Walker of Jeff Davis County, while the deceased was in a hospital at Alpine, Texas, the pertinent testimony of the sheriff being as follows:

"That on the morning following the day of the shooting at the Henderson ranch where Pearl Henderson was injured by a bullet wound, the witness went to the hospital at Alpine, Texas, where Pearl Henderson was being cared for and that the witness talked with the said Pearl Henderson. That she was rational and the witness asked Pearl how she was feeling, to which she, the said Pearl Henderson answered: 'Mr. Walker, I do not believe I am going to make it.'

"Whereupon the district attorney asked the witness:

"Q. 'What further conversation did you have with the deceased?'

"To which question the witness answered that he then asked the said Pearl Henderson the following question:

"Q. 'Who shot you?' To which question and any answer thereto appellant's attorney objected on the ground that the same was hearsay, and any statement made to the witness was not admissible as a dying declaration for the reason that there was no proper predicate laid as the basis for the same as such. That it was not shown that the said Pearl Henderson believed she was going to die and had no hopes of recovery, and that there existed in her mind such consciousness of approaching death as would render any statement made by her admissible as a dying declaration."

This objection was overruled, and the witness answered the question as to who shot her with the word "Jimmy," and the question "What did he shot you for?" with the words "For nothing."

Bill No. 4, which can be treated in conjunction with bill No. 3, shows that after the above conversation the witness Sheriff

Walker and the acting district attorney were present on the same morning of the conversation set forth in bill No. 3 above, and the deceased made a further statement in the presence of a stenographer, who took down the same and transcribed his notes, which document was corrected to some extent by the deceased who then signed the same in the presence of witnesses, the statement read to the jury being as follows:

"I am Pearl Farris Henderson, and I am married to Jimmy C. Henderson and live with him on the Henderson Ranch in Jeff Davis County, Texas.

"We had a party at our home yesterday, November 14th with two soldiers, a Sergeant Gann and a Sergeant Hamilton and two Mexican girls and Jimmy and I. One of the Mexican girls passed out and fell in the rock pile and one of the soldiers went out and got her and brought her back in the house and at that time Jimmy got a shot gun which was in the corner of the room and hit me in the eye with it. I fainted and fell on the floor on my face and Jimmy shot me while I was down on the floor on my face. It was a little gun that he used. The soldiers put me on the porch to bring me to town and a little bit later Jimmy came out to the porch and said he was going to shoot me again.

"He shot twice at me on the floor with the two little guns he had, but only one shot hit me. I was half in the kitchen and half in the front room and laid on the floor on my face where I had fallen after Jummy hit me with the gun, when he shot me.

"When Jimmy got the shot gun I saw he was going to kill Gann or Hamilton, so I grabbed it to keep him from shooting them and he hit me with the gun and took it away from me and knocked me out and I fell on the floor on my stomach. That was when Jimmy shot me in the back. Jimmy threatened to kill me before, and the last time he said he was going to kill me and my father and my brother too.

"Every time Jimmy gets drunk lately, and he said he was going to kill me and I said it was his business. Signed, Pearl F. Henderson. Witnesses: D. O. Jeter, Leo Bishop, J. C. Walker and G. P. Townsend."

The introduction of this statement was objected to in the following language:

"At the time said written statement was offered in evidence and before the same was read to the jury the defendant objected to the admission of the same on the ground that no proper predi-

cate was laid for the admission of such statement as a dying declaration; that the same was hearsay and that it was not shown either by the statement itself or by other evidence that the said Pearl Henderson was conscious of approaching death, and that she did not have any hopes of recovering; and that it was not shown that she was wholly conscious or of sufficient sound mind as to enable her to make any statement whatsoever."

Bills of exceptions Nos. 3 and 4 all relate to the trial court's admission of the above declaration of the deceased, admitted as her dying declaration, and the just above quoted objection is all the objection that was offered to the introduction of such declaration.

We find from a careful reading of these Bills, Nos. 3 and 4, that such bills have failed to state that such bills contain all the predicate laid upon which the dying declaration was admitted. Mr. Branch's Penal Code, p. 1035, section 1864, lays down the following proposition:

"A bill of exceptions taken to the supposed error in admitting proof of a dying declaration without laying the proper predicate to be sufficient must contain, and state it contains, all the predicate laid upon which the declaration was admitted, and must also set out the declaration. Highsmith v. State, 41 Texas Crim. Rep. 37; 50 S. W. 723. Edens v. State, 41 Texas Crim. Rep. 523; 55 S. W. 815. Hopkins v. State, 53 S. W. 621. Gutirrez v. State, 59 S. W. 274. Medina v. State, 43 Texas Crim. Rep. 52; 63 S. W. 331. Francis v. State, 170 S. W. 782."

And to the authorities above quoted we append the following: Elliott v. State, 15 S. W. (2d) 648; Downing v. State, 20 S. W. (2d) 202; Moore v. State, 78 S. W. (2d) 189; Banks v. State, 97 S. W. (2d) 219; Lewis v. State, 128 S. W. (2d) 798.

In the long list of cases above cited the rule laid down has been strictly adhered to since the Highsmith case, supra, decided in the year 1899, and this court has consistently followed the same, for reasons set forth therein. We therefore hold that these bills are fatally defective in that they do not state therein that such bill contains all the predicate laid upon which the declaration was admitted.

Bill No. 5 merely registers an exception to a statement contained in the dying declaration wherein the deceased said: "I fainted and fell on the floor on my face, and Jimmy shot me

while I was down on the floor on my face. It was a little gun that he used." This sentence was objected to "for the reason that it was apparent from the statement itself that it was a conclusion of the person making the same and that the physical facts showed that she could not know of her own knowledge the things testified to. That the same was therefore hearsay and inadmissible." We see no error in the admission of such statement. Evidently the deceased did not remain in a fainting condition during the whole difficulty, and doubtless was possessed of ample opportunity to know and be able to detail some of the circumstances that resulted in her losing her life. This bill is also subject to the same objection as bills Nos. 3 and 4, the above statement being a part of the dying declaration. We are of the opinion no error is shown therein.

Complaint is also made in Bill No. 6 because the trial court failed to charge upon the law of circumstantial evidence. We do not think such a charge was called for, the State relying upon direct evidence herein.

We are indebted to the attorneys representing both sides herein for their briefs, evidencing painstaking labor on their part.

We express the opinion that no reversible error is herein shown, and the judgment will therefore be affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Though not in compliance with the rule requiring that a bill of exception which complains of the receipt in evidence of a dying declaration must state that all the predicate relied upon for admission of the declaration was set forth in the bill, appellant insists that his Bills Nos. 3 and 4 should, nevertheless, be considered.

As pointed out in the original opinion, the rule stated has been in force in this State for nearly a half century. We are unwilling to now deviate therefrom. However, when we look to the court's charge, in which he required a finding by the jury of the existence of all the fact-elements necessary to authorize the introduction in evidence of a dying declaration, before giving consideration thereto, we are unable to reach the

conclusion that error is reflected by the admission in evidence of the dying declarations.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.