D. P. Singleton v. The State.

No. 249. Decided December 8, 1909.

Rehearing denied January 12, 1910.

**1.—Murder—Continuance—Testimony not Important.**

Where, upon trial for murder, defendant's application for continuance did not with certainty describe the witness, and the State showing that the absent witness would not have testified to the facts expected to be proved by him; that said absent testimony was not at substantial variance with the testimony of the State, and that the location of the witness, if he was present at the killing, made it unlikely that his testimony would have been important, there was no error in overruling motion.

**2.—Same—Insanity of Witness.**

Where, upon trial for murder, the defense objected to a State's witness on the ground that he had been convicted of insanity, but it appeared that the witness had been out of the asylum more than six years, was intelligent and perfectly sane, there was no error.

**3.—Same—Evidence—Part of Conversation—Threats.**

Where, upon trial for murder, the defense had brought out the fact that, just before the killing, the defendant drew back his coat and showed witness a pistol, there was no error to permit the State on cross-examination to prove that, when defendant showed witness the pistol, he stated that it was a good gun, and that he was lying in wait for some one; besides, this statement was made immediately preceding the shooting, after defendant had used angry language addressed to the deceased, and it was therefore admissible as a threat against deceased.

**4.—Same—Charge of Court—Defendant as a Witness.**

Upon trial for murder, where the court instructed the jury that defendant's failure to testify could not be taken even as a circumstance against him, was no presumption of guilt, and could neither be discussed nor referred to, there was no error.

**5.—Same—Charge of Court—Negligent Homicide.**

Where, upon trial for murder, the defense claimed accidental shooting, and the court charged on negligent homicide and accidental killing, there was no error in the court's failure to submit the law of negligent homicide of the second degree. Following Friday v. State, 79 S. W. Rep., 815.

**6.—Same—Sufficiency of the Evidence—Motive.**

Where, upon trial for murder, the evidence showed anger, ill-will and resentment on the part of the defendant, but defendant denied the shooting, and it was further shown that the defendant hid his weapon, and also contended that the shooting was accidental, the conviction of murder in the second degree is sustained.

Appeal from the District Court of Palo Pinto. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*W. E. Allen* and *W. F. Smith* and *F. S. Eberhart,* for appellant. —On question of the court's failure to charge on negligent homicide of the second degree: Howard v. State, 25 Texas Crim. App., 686, 8 S. W. Rep., 929; Britain v. State, 36 Texas Crim. Rep., 406, 37 S. W. Rep., 758; Gozy v. State, 34 Texas Crim. Rep., 146, 29 S. W. Rep., 783; Mitchell v. State, 36 Texas Crim. Rep., 278, 36 S. W. Rep., 456; McConnell v. State, 22 Texas Crim. App., 354, 3 S. W. Rep., 699. Upon question of admitting evidence of defendant's statement: Godwin v. State, 38 Texas Crim. Rep., 466, 43 S. W. Rep., 336; Garrett v. State, 52 Texas Crim. Rep., 255, 106 S. W. Rep., 389; Fuller v. State, 54 Texas Crim. Rep., 454, 113 S. W. Rep., 540. On question of insanity of witness: Ford v. State, 35 L. R. A., 117.

*F. J. McCord,* Assistant Attorney-General, and *J. F. Daniel,* for the State.—On question of insanity of witness: Lopez v. State, 30 Texas Crim. App., 487. On question of court's failure to charge on negligent homicide of the second degree: Friday v. State, 79 S. W. Rep., 815.

RAMSEY, Judge.—The appeal in this case is prosecuted from a conviction in the District Court of Palo Pinto County, wherein D. P. Singleton was found guilty of murder in the second degree and his punishment assessed at confinement in the penitentiary for a period of ten years.

The killing occurred in a saloon in the little town of Lyra in Palo Pinto County on the night of the first of December, 1908. It seems that both parties were drinking somewhat and met by appointment or otherwise, in the saloon on the night in question. They had some conversation with reference to some chickens and about visiting each other, in the course of which deceased said that the chickens that he wanted to show appellant did not belong to him, but that he owned an interest in them. Whereupon appellant replied, "By God, I invited you to come to my house and I propose to give you some good music, and what I propose to show you belongs to me and no one else," and added, "I am no pauper, and I am well fixed." This witness also states that at the time appellant told Taylor, deceased, he was no pauper he seemed a little "rowled" up some way, like he was not in a good humor. Just after this conversation appellant drew his pistol from his pocket and was in front of deceased, showing it to him; that deceased told him to put it up and went over and sat down on a bench by the wall; that appellant went over and got down in front of deceased, or knelt down in front of him and soon thereafter the pistol was fired. Some of the witnesses say that at the time and before the fatal shot, appellant had taken some of the cartridges out of his pistol, and raise the issue strongly that the shooting was accidental. At the time he was shot, deceased said, "Pat, you have got me." Almost immediately appellant left the room, but soon returned and sat down on the bench close to where deceased's body lay and remarked: "Aint that hell? Somebody has killed as good a man as there is in this camp," and asked "who could it be?" that the witness said he did not know; that appellant then said, "Someone had it in for me and shot at me and hit Taylor." Appellant also stated he was not armed and could be searched. The evidence further showed that appellant hid his pistol a short distance from the saloon, some eighty yards south of the saloon in the side of a dirt dump running out from a coal shaft; that at this time it was entirely empty of cartridges with the exception of one empty shell, and that this showed to have been recently fired. The statement of appellant voluntarily made before the grand jury was of-

fered in evidence in which he accounted for his having a pistol by reason of having a difficulty with one Halifax, with whom he was expecting trouble and explained that he had carried this pistol every time he went down town at night since 1889; that at the time of the killing he had taken out, as he believed, the cartridges in his pistol and said to deceased he wanted to show him what a fine gun he had; that he then began to snap the pistol and at the third snap it fired and shot Taylor. Others of the witnesses say that appellant and Taylor seemed to be entirely friendly with each other all the time. This is perhaps a sufficient statement of the evidence.

1. When the case was called for trial appellant filed his application for continuance based on the absence and for the want of the testimony of three witnesses, Mrs. W. W. Ledbetter, Richard Moreland and one Brown, who was alleged to reside in Palo Pinto County, Texas, but to be at the time of the trial at Capitan, New Mexico. It becomes unnecessary to state either the diligence or the testimony of Mrs. Ledbetter, for the reason that in opposing appellant's motion for a new trial, an affidavit of this witness was filed in which she distinctly denied the truth of the testimony which it was assumed that she would give, and in terms denied that she would testify to the facts or any of them stated in the application. It is also unnecessary, we think, to discuss the application at length insofar as it relates to the absence of Richard Moreland for the reason that all the testimony of all the witnesses renders it certain that he was not seen at the time of the homicide and would not have given the testimony expected or if he had done so that the same would have been manifestly untrue. As to the witness Brown a somewhat more serious difficulty presents itself. No diligence was exercised to secure his attendance. It is averred that appellant did not know until after the case was called for trial that Brown was a material witness in his behalf and that none of his counsel knew this fact. It is averred that Brown is now at Capitan, New Mexico, at which place his deposition could be taken; that he was present in the saloon where Taylor was killed, standing within ten or twelve feet from the parties and with his face towards them so that he could see and know what each of them was doing; that this witness had been in the saloon for an hour or more next preceding the killing and heard the conversation between them, and if present would testify that appellant was not in any way mad or angry at deceased; that all their conversations were in a friendly way and that appellant did not in a threatening manner flourish his pistol before deceased before he was shot; that a few minutes before the accident which resulted in the death of said Taylor the defendant was kneeling in front of the deceased, and while so kneeling took from his pocket his pistol and in plain view of said witness broke same for the purpose of removing the cartridges therefrom and as witness believed at the time, and as this defend-

ant believed as shown by his acts, removed therefrom all the cartridges with which same was loaded, placed said cartridges in his pocket and was showing the deceased how said pistol would work, and was snapping same at the time of the accident and that the killing was accidental and without any intent on his part to kill Taylor. It is stated that the materiality of the testimony of this witness would appear in this: That the State has alleged and will attempt to prove that the defendant shot and murdered the deceased with malice aforethought; that a short time before said killing of the defendant, defendant had made threats against the said Taylor, and had flourished a pistol near the head of deceased, as previously stated herein; that the shot which resulted in the death of said Taylor was fired by this defendant deliberately and with the intention on his part to kill the said Taylor. It is further stated in the application that if this cause is continued until the next term of this court and the witness fails to return to Texas, that appellant could and would secure the testimony of said witness by deposition as the law permits, and further that said Brown was a coal digger at Strawn, for the Strawn Coal Mining Company, where defendant can and will obtain his full name. In this connection it should be stated that none of the testimony of the State showed or tended to show that appellant was flourishing his pistol about deceased's head at the time of the killing. As to the witness Brown, the State contested the motion on the ground that it would show, if said Brown were present and testified to facts as alleged in said application, that the same would be untrue; and further that the State would show that he was not present at the time of the homicide. In approving the bill of exceptions evidencing the court's action in overruling this application, the following statement is made: "If there was such a man as Brown, in the house at the time of the killing he was not in a position to see it, and undoubtedly did not see it as defendant's witness McDonald places Brown at the time of the shooting ten or twelve feet away, facing north and west, while the shooting was done by defendant who was south of Brown this distance, sitting on a soda box case, facing south with his back to Brown, and with his pistol as low down as his waist immediately in front of him, his body would have necessarily hid the pistol, and his, defendant's, hands from Brown's view; Brown would not, therefore, possibly testify, if present, to the things set out in the application. In aid of this explanation, I refer to and make the State's resistance to the defendant's motion for a new trial, with the affidavits and exhibits thereto attached, part of my explanation to this bill." There was testimony of several witnesses containing references to a man named Brown who was described as being a man about twenty-five years old, of light complexion and rather tall and slender. In resisting the motion for a new trial a number of witnesses testified that they were well ac-

quainted in the immediate vicinity of Lyra and that no such man, that is, no man of that name and description ever lived there or worked in the mines; that there was a man named Arnold Brown, a citizen living there, but he is wholly unlike, in appearance, the person described. The testimony of the witnesses who do refer to Brown, especially appellant's witness McDonald, places him in such position that he could not, in the nature of things, have seen the difficulty. As stated, several of the witness do say that there was present a man named Brown. Any inquiry of them would have developed his presence and would have suggested, if that was his name and such person was present, the necessity and importance of suing out process to compel his attendance. In view of the uncertainty as to his name, the showing of the State that he would not have testified to the facts expected to have been proven, the failure of the State to make proof as to flourishing his pistol which appellant stated rendered his testimony important, the showing of his location rendering it unlikely that his testimony would have been important, all constrain us to believe and hold that the trial court did not abuse the discretion with which the law invests him in overruling appellant's motion for a continuance.

2. The next ground relied upon for reversal is the action of the court in permitting the witness W. W. Ledbetter to testify. When tendered as a witness, appellant proved in limine that he had been adjudged a lunatic in Erath County, on the 23d day of February, 1903. From inquiry of the witness it was ascertained further that he had gotten out of the asylum, but the objection was made that there was no showing made that the judgment establishing his lunacy had ever been in any way vacated. Thereupon, appellant objected to said witness testifying to any fact or facts in this cause, for the reason that he was not a competent witness to testify to any fact, but was presumed to be insane, as it had been shown that he was adjudged insane by a court of competent jurisdiction, and there was no proof going to show that said witness was sane at the time he so testified. The court approved this bill of exceptions with the explanation and statement that the witness had been out of the asylum more than six years and was intelligent and perfectly sane. This explanation implies, of necessity, that the court had satisfied himeslf that the witness had fully recovered his mental balance and was sane and in every respect mentally competent to give an intelligent account of the circumstances about which he was testifying. We do not think under the court's explanation there was any merit in this contention.

3. Again it is urged that the court erred in admitting in evidence certain testimony of the witness Zack Stallings. This statement occurred in conversation had just a short while before the killing; during which appellant drew his coat back on the right side and

showed witness his pistol and told him that he, defendant, had a "dam good gun," and that he "was laying for some God-dam-son-of-a-bitch." This testimony was objected to for many reasons and among others because it was not shown to be directed to the deceased or in the class which would include him; that it was irrelevant, incompetent and immaterial and calculated to prejudice appellant before the jury. The bill evidencing this matter is allowed with the following explanation: "That during the examination of the witness by the defendant's counsel they proved by him that in conversation with Stallings, immediately preceding the killing, the defendant drew his coat back on the right side and showed witness his pistol; and on cross-examination the State was permitted to draw out the balance of the conversation that took place in connection with the act of exhibiting to the witness the pistol. In other words, the defendant having proved this act and some statement of the defendant in connection therewith the court permitted the State to draw out other parts of the same conversation relating to the same subject and explanatory of the act and conduct of the defendant, which had been put in evidence by the defendant. The court thought this testimony also admissible because the statements were made immediately preceding, and within a very few seconds of the shooting, and in the light of the circumstances that immediately followed, the court was of the opinion that this was a threat that embraced within its malignity the deceased." It should be further stated that the language objected to was made immediately after the angry language addressed to deceased by appellant testified to by the witness Ledbetter, and as a continuance of the same provocation and was under all the circumstances, we think, sufficient to show that same was spoken with reference to deceased. Again, the testimony was clearly admissible as stated by the court, in that the same matter having been in part inquired about at the suggestion of appellant, the State was entitled to have all the testimony touching the same matter introduced in its behalf. Besides this, in view of the plea of accidental homicide, and the issue as to whether the shooting was intentional, any circumstance or declaration showing appellant's state of mind which would throw light on this issue was both pertinent and admissible.

4. The next complaint relates to the charge of the court in respect to the failure of the defendant to testify. This charge was in this language: "The law allows a defendant to testify in his own behalf, but a failure to do so is not even a circumstance against him, and no presumption of guilt can be indulged in by the jury on account of such failure on his part; and the jury will not mention, discuss, or even refer to the fact that the defendant failed to testify." The objection to the charge is that it does not, in terms, instruct the jury that they can not consider the failure of the defendant to testify. We think the complaint is hypercritical. The charge approved in

the case of Leslie v. State, 49 S. W. Rep., 73, is more full and complete than the one here complained of. See also Fulcher v. State, 28 Texas Crim. App., 465; Anderson v. State, 53 Texas Crim. Rep., 341.

5. Complaint is also made of the charge of the court in that it did not submit negligent homicide of the second degree. We think, under the facts of the case, that the charge of the court submitting negligent homicide and accidental killing was sufficient and in the light of the record, in view of the submission of these issues, the failure of the court to so instruct the jury, evidently could not and did not injure appellant. Friday v. State, 79 S. W. Rep., 815.

6. Finally it is urged that the verdict of the jury is contrary to and unsupported by the testimony. Particular stress in connection with this complaint is laid upon the absence of any adequate motive. The motive shown is, indeed, slight and there are some circumstances tending strongly to support appellant's contention that the killing was accidental. On the contrary there were significant and potent circumstances tending to show his guilt. There was evidence of anger and ill-will, and resentment on the part of appellant. The fact of his denial that he had done the shooting and his falsely attributing Taylor's death to an intended assault upon himself by someone outside of the house; the fact of his leaving the place and hiding his weapon, are all circumstances at variance with his contention of an accident. We can not determine guilt always by inadequacy of motive. We are daily witnesses, in the records that reach us, of the light esteem in which life is held, and the shocking murders on motive so inadequate as to both excite surprise and horror. These were matters for the jury. We feel that we ought not, in the light of the entire record, to interfere. The appellant seems to have had a fair trial and we have found no error in the record which would justify us in reversing the conviction. It is, therefore, affirmed.

*Affirmed.*