J. B. DOWNING v. THE STATE.

No. 12047. Delivered May, 1, 1929.
Rehearing denied October 9, 1929.

236

The opinion states the case.

*Cox & Hayden* of Abilene, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, two years in the penitentiary.

Appellant was an attendant at the Abilene State Hospital where epileptic patients were confined. The deceased, Joe Marze, was a patient in said institution at the time of and long prior to his death. The indictment alleges that appellant killed Joe Marze by kicking and striking him with his feet. The evidence for the State shows that appellant took deceased into a stool room to treat his mouth and there inflicted injuries upon him which resulted in his death some two or three days later.

Bills of Exception Nos. 8 and 9 present the alleged error of the Court in admitting in evidence before the jury the dying declarations of deceased made a short while before his death to an attending physician. The testimony shows that Joe Marze was admitted to the epileptic colony or state hospital in 1904 from an insane asylum and that there existed against him an unvacated lunacy judgment. If we comprehend appellant's contention, it is that no sufficient predicate was laid for the admission of the alleged dying declaration and that same was further inadmissible because the declarant was insane. It appears from these bills of exception that a witness testified deceased said before he made the alleged dying declaration that he thought "he was going to die. * * * He was mumbling to himself and to me, when I was examining him.

He said he would not get well. He did not say that he knew he was going to die, or was sure that he was going to die. * * * The substance of it was that he thought he was going to die, or was going to die. The substance of what he said was that he was going to die. That was the extent of it. The statement which he made to me was voluntarily made. I did not ask him any questions. He was rational." We think this testimony is sufficient to show that a proper predicate was proven for the admissions of the statements of deceased as dying declarations. Hunnicutt v. State, 18 Tex. Crim. App. 516; Branch's P. C., Sec. 1863. It is gravely doubtful whether the bills are sufficient to present this question, under the following rule:

"A bill of exceptions taken to the supposed error in admitting proof of a dying declaration without laying the proper predicate to be sufficient must contain, and state it contains, all the predicate laid upon which the declaration was admitted, and must also set out the declaration." Highsmith v. State, 41 Tex. Crim. Rep. 37; Branch's P. C., Sec. 1864.

In neither of these bills is it made to appear that any objection was made to the testimony because the declarant was insane at the time and the question of its inadmissibility on the ground of insanity is not properly presented for review. We are inclined to the view, however, if such objection had been made that it would have had no merit. The rule is stated by Mr. Underhill as follows:

"A witness is not incompetent to testify upon the grounds of his insanity merely because he has been adjudged insane and has been confined in an insane asylum. Evidence of these facts is not conclusive of his insanity. They raise a prima facie presumption of incompetency which the party offering the witness must overcome. The question is one wholly for the trial court in determining the competency of the witness. There is no presumption that insanity shown to have existed has continued down to the date of the trial. The court should consider the conduct and actions of the witness in the court room and may also take into consideration his manner of giving testimony. If the witness appears rational and meets the tests imposed by law in case of the alleged insanity of a witness, he is competent, though it may appear that at one time he was in an asylum for the insane." Underhill's Criminal Evidence (3rd Ed.), Paragraph 328.

See also Nations v. State, 91 Tex. Crim. Rep. 112; Batterton v. State, 52 Tex. Crim. Rep. 381; Singleton v. State, 57 Tex. Crim. Rep. 560; Art. 708, C. C. P.

Such a question is a judicial one, and we may indulge the presumption, in support of the Court's ruling, that he had before him at the time such facts as properly showed the declarant competent, especially in the absence of a showing to the contrary in the bills.

Bills 5 and 6 present the alleged error of admitting certain statements of deceased made a short time after he emerged from the stool room where the State contends he was fatally injured. Another inmate testified that deceased said to him: "Joe Marze said that he did not expect to get over it. He said he did not expect to get well, that he was too badly hurt." This was objected to as hearsay, the appellant not being present and it not being res gestae. The Court certified that this was admitted as a predicate to the introduction of the dying declaration of deceased. In view of the contest made by appellant as to the existence of a proper predicate for the admission of deceased's alleged dying declaration, we think the testimony was admissible upon the theory stated by the Court.

Complaint is made that the witness was also permitted to testify that deceased told him he had been "beaten and kicked unmercifully." This latter statement was stricken by the Court and the jury instructed not to consider same. We do not think either of these bills present any error. We are not certain but that these bills might properly be disposed of on the ground that the alleged declarations were a part of the res gestae but we forego any discussion of this as the above, we think, correctly disposes of appellant's contention.

The State proved over objection by appellant that he was then under indictment for assault to murder. This was objected to as prejudicial. It has so ofttimes been decided that such testimony is admissible as affecting the credibility of the accused as a witness, that we cannot believe any discussion of this point is necessary.

We deem the evidence sufficient and there being no errors in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

Morrow, P. J., not sitting.

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Doctor Freeman, a physician in the Abilene State Hospital, testified that he was instructed to examine the deceased but to ask him no questions; that during the examination the deceased gave information, either by words or actions, that he was conscious of the approaching death and said that he thought he was going to die or was about to "pass out." He was rational at the time. He did not say in terms that he knew he was going to die. *The deceased said that the attendant on No. 6 threw him down and stomped him. He called no name.* The objection was general; that is, there had not been a compliance with all of the necessary statutory preliminary requirements; that the circumstances surrounding the testimony as a whole are not sufficient to comply with the statutory requirements. Deceased at the time was suffering from severe injury which, on the day following the declaration, resulted in his death. An autopsy disclosed the abdomen full of blood, the liver and spleen ruptured, the covering of the intestines lacerated and three ribs broken. There were also external injuries. As a predicate for receiving in evidence a dying declaration, it is not essential that the declarant shall state in specific terms that he is conscious of impending death. It is enough if it satisfactorily appears in any mode that they were under that sanction, whether it be proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants stated to him, or from his conduct or other circumstances of the case; all of which are resorted to in order to ascertain the state of the declarant's mind. (Hunnicutt v. State, 18 Tex. Cr. App. 499). See collation of authorities in Vernon's Tex. C. C. P., Vol. 2, p. 805. Tested by the objections addressed to dying declarations, the ruling of the court seems manifestly correct.

At some undisclosed stage of the trial, a written motion was presented to the court setting out the statutory requisites of a dying declaration and requesting the court to instruct the jury to disregard the declaration in question. The request was refused and exception reserved, and appellant points to it as sustaining his present contention that this court must take cognizance of the claim that the deceased was not of sound mind for the reason that he had been adjudged insane. As to the motion above mentioned, it is not preserved in the shape of a bill of exceptions, and its efficacy to require review is doubtful. Dealing with the subject

upon its merits, however; and as properly raised, we make the following remarks: Our statute, (Art. 708, C. C. P.) declares that all persons are competent to testify in criminal cases except the following:

"Insane persons, who are in an insane condition of mind at the time when they are offered as witnesses, or who were in that condition when the events happened of which they are called to testify."

Art. 725, C. C. P., stating the conditions upon which a dying declaration may be admitted, declares that it must be satisfactorily proved that the deceased was of same mind at the time of the making of the declaration. It is the position of the appellant that the proof that the deceased had been adjudged insane and that he was confined in the State Hospital as an epileptic placed upon the State in offering the dying declaration in evidence the burden of establishing the sanity of the deceased at the time the declaration was made and that there was a failure to discharge that burden. The rule of law is, we think, correctly stated by appellant's counsel. It is subject to the qualification, however, that the presumption of continued insanity is a rebuttable one.

The case was treated on the trial as resting alone upon circumstantial evidence, and the jury was so instructed. The dying declaration was but one of the circumstances upon which the State relied. There were other cogent facts in evidence pointing to the guilt of the accused. In substance, there was evidence that the accused had some grievance against the deceased; that it was the duty of the appellant to apply iodine to the mouth of the deceased; that the deceased was taken by the appellant to a room designated as a stool-room, which was in fact a toilet. There was evidence from a witness who was admittedly nearby that he heard the deceased curse the appellant and saw the appellant knock the deceased down; that he heard appellant curse the deceased and saw him stomp the deceased or do something after he had been pushed down; that he heard the deceased say, "That is enough; please quit." The appellant admitted that he took the deceased to the stool-room and mopped his mouth according to the doctor's directions but disclaimed making any assault upon him or doing him any injury. There was evidence that deceased, soon after leaving the stool-room, went to his sleeping-room and complained of pain and said that he was very badly hurt and did not expect to get over it; that he did not expect to get well as he was very badly hurt. He appeared to be suffering pain and talked like a man suffering pain.

A witness, who was a room-mate or bed-fellow of the deceased, testified that he had never heard of him having any epileptic fits at night, and that on the night in question he did not have any fits. The deceased was taken to the hospital the morning after the alleged injury and, as we understand, died the following night.

The deceased was an epileptic. He was adjudged insane apparently at a time before the establishment of the institution in which he was confined at the time of his death. At least we draw such inference from the fact that he was transferred from an insane asylum to the institution in question, which was specially maintained for the treatment of epilepsy. Specific evidence upon the subject of the deceased's mental condition is somewhat meagre. There was evidence, however, that he was able to perform and was assigned certain duties about the premises. There was no evidence that he was continuously insane or that he had frequent spasms of epilepsy. It was shown that epileptics differed in their mental condition from insane persons in that the loss of mental faculties was spasmodic with epileptics and continuous with insane persons. Using the words of the doctor: "With an insane man, his mental condition is fixed, but with an epileptic it varies from darkness to light. Generally speaking, the true epileptic is normal at times. They are generally normal except when attacked with epileptic spells or fits. They are normal at times, from six to eight months, and some of them are subject to epileptic fits of much shorter intervals. The fact that one is adjudged an epileptic and a lunatic would not in all cases affect his mentality. Insanity is not epilepsy, and epilepsy is not insanity but may produce insanity." Speaking specifically of the people in the State Hospital, the doctor from whom the above statement is collated said that they were sometimes normal and sometimes abnormal; that their abnormality was caused from toxemia and was relieved by treatment.

Taking note of the fact that at the time the trial court ruled upon the reception of evidence of the dying declaration, the ruling was proper as against the objections made. Giving consideration to the fact that the motion to withdraw the testimony which, so far as the record shows, for the first time suggested the specific question discussed above as to the burden or proof of sanity, neither the motion nor the record shows whether the motion was made before or after the evidence was closed. The opinion is expressed that a reversal of the judgment would not be warranted for the want of more specific and definite testimony in discharging the

burden which rested upon the State by the introduction of proof of the judgment of insanity. In discharging such burden it is not essential that an annulment of the judgment of insanity be had. The admissibility of the testimony of one who has been adjudged a lunatic is in a sense a judicial question to be determined by the judge presiding at the trial upon evidence or facts before him. In this connection, it is to be noted that the credibility of such testimony is a question for the jury, and for their information it would be competent that all the facts bearing on the subject be heard upon the trial. This rule is announced, the court depending upon a meagre statement of facts, in the case of Singleton v. State, 57 Tex. Cr. R. 561, and is reaffirmed in Nations v. State, 91 Tex. Cr. R. 112. In a case involving the conviction of one who was an attendant for an assault upon an inmate of an asylum, the Supreme Court of Missouri, in an interesting, well-reasoned and thoroughly considered opinion holding admissible the testimony of the inmate who had been adjudged insane and who was confined in an insane asylum, authorities are cited and reviewed at great length. See State v. Herring, et al., 188 S. W. 169. The question is also reviewed in Wigmore on Evidence, 2nd Ed., Secs. 492, 496 and 497, and many precedents are cited in the notes which coincide with the rule stated and applied in our jurisprudence and others.

The complaint of the proof that the appellant had been charged with an assault with intent to murder upon another inmate of the hospital cannot be sustained for the reason, as we understand the record, that the proof was not introduced by the State. The appellant became a witness in his own behalf. State's counsel went no further than to ask if he was not under indictment for an assault with intent to murder. This the appellant answered in the affirmative. In making the inquiry State's counsel was clearly within his rights as the indictment for a felony was a matter which was admissible upon the issue of the credibility of the appellant as a witness. On re-direct examination the appellant's counsel developed the fact that the assault for which he was indicted was upon another inmate of the institution and went into some detail touching the incidents of the conflict with the other inmate out of which the indictment grew. The fact that State's counsel, on re-cross examination, asked questions bearing upon the matter brought out by appellant's counsel would not support the complaint made. The analogy between the case of Praether v. State, 18 S. W. (2d) 649, is not perceived.

It is claimed by the appellant in his motion for rehearing that in attempting to charge the appellant's defense the court shifted the burden of proof and that same was upon the weight of the evidence. The indictment charged that the appellant killed the deceased by kicking and striking him with his foot. The court affirmatively required the jury to believe, beyond a reasonable doubt, this allegation of the indictment before a conviction could be had. The defense was a denial of this fact. In presenting this, the court did so in a rather inapt and negative manner, but taking the charge as a whole, we do not think any injury could have resulted to the appellant, and we are inhibited by the terms of Art. 666, C. C. P., from reversing the case under such circumstances. The defensive charge objected to is somewhat like that discussed in Leahy v. State, 13 S. W. (2d) 874, which was there held harmless error. The case of Harris v. State, 117 S. W. 844, relied on by appellant, is not deemed in point. In the Harris case the jury was required to disbelieve the concurrent existence of several facts, either one of which might have entitled the accused to an acquittal, and the law of reasonable doubt was not applied to any of these. We construe the charge as a whole in this case as requiring the jury to believe, beyond a reasonable doubt, the accusatory facts alleged in the indictment before a conviction could be had, and to acquit if there was in their minds a reasonable doubt of these.

The motion for rehearing is overruled.

*Overruled.*