## W. W. GANDY v. THE STATE.

No. 20814. Delivered March 13, 1940.
Rehearing Denied May 22, 1940.

344

The opinion states the case.

*C. S. Farmer,* of Waco, and *Scott Reed,* of Groesbeck, for appellant.

*L. L. Geren,* County Attorney, Limestone County, *J. B. Engledow,* Assistant County Attorney, and *L. W. Shepperd,* Special Prosecutor, all of Groesbeck, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged by indictment in the district court of Limestone County with assault to murder with malice. The offense is alleged to have been committed on the 16th day of July, 1938. The trial of the case was had on July 5, 1939, and the verdict of the jury resulted in finding the defendant guilty of assault to murder with malice and fixing his punishment at two years in the State penitentiary.

The facts disclose that the prosecuting witness, Hubert Harris, lived within a few miles of the city of Groesbeck and

was engaged in farming. He had a watermelon patch in which he raised melons for the market. On the occasion of the trouble, which was Saturday about noon, he had parked his truck loaded with melons near the intersection of an alley with a public street in the business district and in a crowded section, where he prepared to offer his melons for sale. The appellant, W. W. or Bill Gandy and his brother, Albert Gandy, together with a friend of theirs, approached the prosecuting witness in a manner indicating that they had been angered or insulted by some previous remarks which the prosecuting witness had made concerning them. The appellant announced that he understood that the prosecuting witness wanted to whip or kill some of the Gandys and said, "Here we are." That is probably the most reasonable interpretation of the summary of all the testimony as to what was said. Of the numerous witnesses called by the State, no two understood exactly the same thing to have been said. There is nothing unnatural about this, and there is no material difference in the purport of the statement as they each remembered it. Regardless of the verbiage, the same conclusion must be reached. The Gandy brothers were angry and announced their insult upon their approach in a way that invited the beginning of hostilities. Harris accepted the challenge, for it was no less than such, and instantly made the assault upon the appellant, who apparently was taken somewhat unaware by Harris' quick action and retreated backward across the alley and at least to the center of the street which was estimated to be about sixty feet in width. During this retreat, Albert Gandy pursued Harris and engaged in a fight. Under the testimony, as we understand it, it appeared to be a fist fight with the two Gandy brothers and the prosecuting witness between them until they reached the middle of the street, when both the Gandy brothers began cutting Harris with knives which resulted in the infliction of some serious wounds on Harris, but none on either of the Gandys, and there is no evidence that Harris attempted to use any weapon of any kind whatsoever. According to the State's theory, the appellant called to his brother to cut Harris' head off and again said they should kill him while they had him. This language was embellished with the usual emphasis, the words of which are not essential to a correct understanding of the case. The language is probably the strongest indication of an intent to take the life of Harris of anything in the case.

Appellant presents that the evidence is wholly insufficient to support the conviction. The court gave a charge on self-

defense. Our difficulty from the record is in finding evidence sufficient to warrant a charge on self-defense. We think the conviction is amply supported by the evidence.

By questions asked of several witnesses, it is indicated that appellant had an affliction which would require more than the ordinary effort, and might justify more than the ordinary means to defend himself from the attack of Harris. However, no physician testified as to the nature of this affliction. The barber whose cross-examination gives us the most definite description fails to state that the appellant had a hole in his head or that his brain was so exposed as to be easily affected, as indicated by the questions asked by the defendant's counsel. The existence of the wound, its nature, and the result of it, should play an important part in determining the question as to whether or not a charge on self-defense would be proper. The condition of the present record fails to include all the evidence in this regard which might be available. If a plea of self-defense could justify the action of the appellant, it must be because of this affliction or by some other physical fact which does not appear from the record. It will be assumed, however, from all the circumstances that the trial court was justified in giving the charge.

The prosecuting witness testified as to the approach by the Gandy brothers and also as to his immediate action in accepting the challenge presented to him and in making the attack on Bill Gandy. After being asked concerning all of these facts, he was permitted to testify over objection of the appellant as follows: "I hit Bill Gandy when he came up to me, in the manner he did with his hand in his bosom, because I thought he was going to pull a gun on me or something."

. This evidence is an explanation of the attack made by the witness on the defendant and it is complained of as a matter in his mind undisclosed to the appellant. Ordinarily, evidence of the undisclosed purpose of a prosecuting witness in approaching and assaulting the accused at the time of the commission of the offense is inadmissible as an attack on the right of the accused to defend himself. This rule is based upon the fact that the accused could not be charged with the motivating cause in the mind of his assailant unless he knew at the time what the cause was.

In the case of Tillman v. State, 101 S. W. 210, the party prosecuted for murder had received threatening letters from unknown persons demanding that he move from the community.

Shortly thereafter he discovered that the house where he was boarding was surrounded by a number of persons who were armed and who demanded that he come out. He did so, but approached shooting, which resulted in the death of one of the parties. The State offered to prove the motive for the parties going to the house. Under the circumstances of that case, it was held that the evidence was inadmissible. It will be noted, however, that the explanation offered was not based on any immediate or recent act of the appellant which was before him at the time of the homicide, or even known to him, explaining or tending to explain the aggressive conduct of the deceased.

Again, in Darnell v. State, 126 S. W. 1122, the accused relied upon his right of self-defense and proved threats of the prosecutor. Following these threats, evidence was offered by the State to show the undisclosed purpose of the prosecutor in approaching and assaulting the accused at the time the offense was committed. The circumstances of this case are likewise different from those in the one before us in that they do not present a state of facts which would at the very instance of the attack disclose to the accused the reason for the attack.

The instant case is to be contrasted from the foregoing by a state of facts which we think are controlling. Appellant approached with his hand in the bosom of his shirt in a threatening manner. His very language not only invited an immediate attack from Harris with an indication of a preparedness to defend himself, but it may well be construed by a reasonable man as an immediate threat to make an attack himself. The evidence complained of is the conclusion of Harris as to his perilous position in front of Gandy and naturally flows from the things said and done by Gandy. He must have known his conduct put Harris in motion. It is therefore without the rule forbidding the introduction of evidence of undisclosed motives.

By bill of exception No. 6 appellant complains of what he denominates an oral instruction to the jury by the trial judge. Concluding their deliberations, the jury came into the court room with the following verdict:

"We, the jury find the defendant guilty of an assault with intent to murder and assess his punishment at two years confinement in the State penitentiary.
"J. E. Birmingham,
"Foreman of the Jury."

Upon examining the verdict, the court said to them: "Gen-

tlemen of the Jury, the Court, under the law, instructs you to find, in your verdict, whether it is with malice or without malice, if you find him guilty. If you find him guilty, find *without malice* or *with malice*."

The statement of the court, in its formality, appears to be a charge to the jury. We find, however, that it is upon a subject embraced in the written charge of the court. He had instructed them as to the law which would require a verdict with malice or a verdict without malice, if they found him guilty. The jury had already returned its verdict. The instruction was nothing more than that the jury should correct their verdict to conform to the written charge which had been given them, which it said was the law of the case. The law requires the presence of the defendant in the court room when the verdict is returned, and there is no complaint of it being done in his absence. It will therefore be presumed that he was present. The record shows no objection at the time and no request that the statement of the court should be in writing. It therefore appears that defendant's counsel viewed the matter at the time as we now view it; that is, a mere instruction to the jury to correct their verdict, which was done.

Ables v. State, 281 S. W. 858, was reversed because of the following oral charge of the court: "Gentlemen of the jury, you must not separate during the trial of this case. If you separate, your verdict will be a nullity, and void, and I will have to set it aside, and give the defendant a new trial, and what you have rendered in this case will be void."

It will be noted from the foregoing that the vice in the case is the fact that the court assumed in his statement that they were going to return a verdict which, if followed by a separation of the jury, would have to be set aside at the instance of the defendant, and it was specifically stated that the court would have to "give the defendant a new trial." The same defect was noted in the court's statement to the jury in Mahaney v. State, 254 S. W. 949, as well as in Johnson v. State, 149 S. W. 165. These cases are relied on by appellant.

In the case of Hale v. State, 47 S. W. (2d) 834, complaint was made of the written charge that it did not charge on the burden of proof nor that the defendant was to have the benefit of reasonable doubt. After this objection was presented in writing and filed with the clerk, the court supplemented his written charge by an oral charge on the subject in an attempt to cure the defect. This court held the action to be error. The

question in that case was different from the one before us because it was a supplement to a defective written charge on the subject in an attempt to supplement, add to and cure by an oral instruction that which was left out of the written charge. The action of the court herein complained of presents no new matter. The very subject of it is embraced in the written charge, and the only result that could possibly be attributed to his action was to correct the verdict, as the jury had already found it and conform it to the written instruction which he had given.

Bill of exceptions No. 9 is concerned with the argument of the private prosecutor in his address to the jury, and in order that such bill be fully understood it is necessary to quote therefrom, the matter complained of being contained in the last quotation in the following argument:

"Now then, gentlemen, we are getting to the real merits of this case. There are seven words in the testimony that are uncontradicted by the evidence and unchallenged by the evidence and absolutely unchallenged by any argument that tell the whole story; that explain this whole thing. You know when Hubert Harris was on the stand telling you he was standing by that water melon wagon when Bill Gandy approached him and said: 'Hear you want to take a pop at or you want to whip a God damned Gandy, here we are—here we are.' All right when the defense took him on cross examination and hammered him and hammered him and brought out this question with much display of calling the jury's attention to it 'do you know a single solitary reason in the world why Bill Gandy would come down here and say that to you if you hadn't made that statement or hadn't said something to that effect,' and his answer was those seven words that tell the story, gentlemen. Do you remember what it was? No witness has contradicted it, no attorney in argument has in the least questioned it. Those words are: 'Because he is that kind of a man.' Gentlemen, gentlemen, that was their evidence.

" 'Can you imagine if a bulley, a rower, fusser and fighter wanted to pick a fight out of a man for any reason in the world—'.

"At the time Mr. Shepperd made said statement, 'Can you imagine if a bulley, a rower, fusser and fighter wanted to pick a fight out of a man for any reason in the world,' defendant's counsel objected thereto, and the court instructed the jury not to consider that part of Mr. Shepperd's argument, and ordered it stricken from the record."

In the case of Albert Gandy v. State, 129 S. W. (2d) 661, a companion case to this one, the following was held to have been error: "The State on cross-examination of appellant proponded to him the following questions: "Now, Bill Gandy is quite a "boozer" himself and "gun-toter," a rower and fusser and fighter?'"

It will readily be seen that the statement in this case, above objected to, was not completed but was subjected to an objection before an application thereof was made in the argument. We are not impressed with the idea that such an argument was inadmissible, especially on account of the cross-examination of the prosecuting witness, and the testimony of further witnesses in the case. In any event it is shown that appellant did come up to where Mr. Harris, the injured party, was at his watermelon wagon, and accosted Harris and said, in substance, that he heard Harris wanted to whip a Gandy, and "Well here we are." That the fuss and the row and the fight thereupon began, and a good deal of language seemed to have been then used by appellant such as "Cut him," and "Cut his guts out," and other words that may have evidenced the characteristics embodied in the above objected to words which, on account of the prompt objection being sustained by the court, were never applied to anyone, and such sentence was never completed. We are not of the opinion that such an argument was inadmissible, and no error is evidenced, but we do think that if such error was committed, that same was cured by the court's prompt instruction to the jury to disregard such argument.

We do not think any error is shown in bill of exceptions No. 10, but do think same was a legitimate deduction from the testimony.

Bill of exceptions No. 11 complains of the following remarks of the special prosecutor in his address to the jury, as follows: "They tell you and read from the court's charge about his having the right to defend himself, but in that charge the court told you to view it from Bill Gandy's standpoint, and told you if he cut Hubert Harris at the time he did, he had a fear of death or serious bodily injury at the hands of Hubert Harris to find him not guilty. What evidence is there in this record showing the slightest fear of any injury whatever?"

It is contended that the last sentence thereof necessarily referred to the defendant's failure to testify in this case. We do not think such is a necessary deduction from the above quoted remarks. The only part thereof that could possibly be

objectionable is the sentence: "What evidence is there in this record showing the slightest fear of any injury whatever?" It is contended that the oral testimony alone of the defendant is the only way that a fear of injury could be shown, and therefore such an argument necessarily referred to appellant's failure to testify. With this we do not agree. Such could have been shown by his actions prior to the beginning of the difficulty, during the difficulty, and after such difficulty. It was shown by witnesses that he, together with his brother, sought the meeting with the injured party; that he and his brother fought the injured party; that appellant called to his brother to cut Harris; that they did cut him, two of the wounds being dangerous wounds, one severing an artery in the hand, one penetrating the plural cavity and air coming therefrom, and one in the back; that these two continued fighting until separated by Goolsby, and then the Gandy brothers walked over to a drug store and appellant drank a coca cola, and had such a slight injury himself that water washed it off. The appellant's actions, his coolness, his calmness, his demeanor, the words he spoke during the fight, were all in evidence, and oftentimes they speak louder than later uttered words in showing the condition of one's mind during a difficulty such as this. The record is replete with appellant's acts and words, testified to by others, and we do not think that the above objected to sentence is violative of the statute prohibiting a reference to the accused's failure to testify. This bill is overruled.

It was shown that Mr. Harris had two serious and dangerous wounds in his body, received in this affray. An artery was severed in his hand, and he was permanently crippled in such hand; that a chest wound penetrated the plural cavity, and bubbles of air were escaping therefrom when first seen by the doctor, and that he had a further wound in the back.

We think the facts justify the verdict of an assault to murder, and finding no error herein the judgment is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

We remain of opinion that the questions discussed originally were correctly disposed of. To write further regarding them is not necessary.

Appellant complains because we did not discuss in detail his bills of exception 2, 3, 4, 5 and 10. We have again examined said bills and it appears to us now as it did on original sub-

mission that none of them presents any serious question, and that a discussion of them is unnecessary and would serve no useful purpose.

Appellant strongly urges that his bill of exception number twelve reflects reversible error. It has reference to appellant's claim that the jury discussed his failure to testify and was guilty of other misconduct. The evidence heard by the court on the motion for new trial is before us and has been examined. From it the court was justified in concluding that the only reference to appellant not having testified came from the reading of the court's charge telling them that they could not discuss that fact, and the jurors asserted that it was not thereafter mentioned.

The other claim of misconduct arose from the following incident. The jury considered and discussed the case until about nine o'clock one night, at which time they ceased deliberating, called in Mr. Bradley, the deputy sheriff who had them in charge, and told him they were ready to retire. After some of them had gone to bed the jurors began telling yarns about some fights they had engaged in previously, and some of them exhibited scars; Mr. Bradley exhibited a wound in his shoulder where he had been shot about forty years before. All of the twelve jurors testified. It was asserted by all of them that at the time the incident happened they were not discussing nor considering the present case, and that what was said or done by anyone in connection with the "spinning of yarns" had no reference to the case. Appellant insists that Art. 671 C. C. P. which precludes any person from conversing with a juror includes the deputy sheriff, and that because the State did not call said officer as a witness on the hearing of the motion for new trial the State did not comply with the rule that:—
"Ordinarily, where it is shown that there is a conversation with some unauthorized person, it is incumbent upon the State to not only negative any harmful remarks or transactions by the members of the jury, but it is demanded that the person in question be likewise called to testify."

The deputy sheriff was not an "unauthorized person." He was properly present. Of course, his presence would not be permitted at a time when the jury might be discussing the case on trial. It is not to be presumed that when he is properly with the jury that he must act like a deaf and dumb man, and that it would be violative of said statutes for him to engage in a general conversation having no connection with the case

on trial. The Newton case, 114 Tex. Cr. R. 537, 26 S. W. (2d) 233, we regard as authority for the State's position that the rule quoted has no application here.

Appellant's motion for rehearing is overruled.