**Robert Eddie Louis JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38841.**

Court of Criminal Appeals of Texas.

Feb. 16, 1966.

Rehearing Denied April 13, 1966.

Second Motion for Rehearing Denied
May 25, 1966.

Sid S. Stover, Jasper, for appellant.

Grady O. Trimble, Dist. Atty., Jasper, Floyd W. Addington, Dist. Atty., Jasper (on rehearing), Bill A. Martin, County Atty., Newton (on rehearing), Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

BELCHER, Commissioner.

The conviction is for murder; the punishment, death.

The testimony of the state reveals that Patrolman Nicholson of the Department of Public Safety stopped an automobile about 2 a. m., January 26, which the appellant was driving with a headlight out. Using a flashlight he approached the car also occupied by two other persons when the appellant suddenly reversed his car which struck Nicholson's car, damaging the fender and hood. Appellant then fled, with Nicholson in pursuit, at speeds reaching 90 miles per hour through stop signs and red traffic lights while so maneuvering that Nicholson could not pass. After three miles he came to a dead-end street. After making 95 feet of skid marks, "jumping" a ditch, a fender struck a telephone pole turning the car which went through a barn sideways causing its roof to fall, and then knocking out one side of a garage, where it stopped. Albert Bowie, one of the occupants of appellant's car, after going through the windshield, survived the collision but Sallie Bowie Mathews, an elderly woman, was killed. While officers looked for appellant, he walked to a car occupied by Deputy Sheriff Thorpe, and asked Thorpe if he wanted him. Upon being asked what he had done, the appellant told Thorpe he had killed two people in Hemphill, Texas. The appellant further said that he killed them with a .22 rifle, and then directed Thorpe to a place near the car he had wrecked and picked up the rifle out of some high weeds and mud and gave it to Thorpe, which he identified at the trial. The appellant, the .22 rifle and $793.69 in money were delivered to Sheriff Humphreys. While testifying, Dr. Albert Bowie identified said .22 rifle as the one he gave his sister Sallie Bowie Mathews.

The appellant was staying with Sallie Bowie Mathews, an elderly woman and taking care of her. Sallie was a sister of Mathew Bowie. Albert Bowie was a son of Mathew and Preatha Bowie and lived with them. Dr. Albert Bowie, another brother of Sallie had taken a .22 rifle

to the home of Sallie so that appellant could use it to hunt squirrels.

Officers went to the home of Mathew and Preatha Bowie, husband and wife, and their bodies were found on the floor with six bullet holes in the body of Preatha Bowie, the person alleged in the indictment to have been killed by the appellant. The testimony of a physician reveals that she died as a result of the bullets entering her body.

The evidence shows that Mathew Bowie had sold a large number of livestock just prior to his death. A large woman's purse was found on the bed in the Bowie home with its contents scattered over the bed. George Bowie saw the appellant walking by his home carrying a gun the day before the bodies were found. The appellant told George Bowie, a brother of Mathew Bowie, about three weeks before the killing, "Do you know what? You can do anything you want to do, go into Mexico and they'll hide you." The testimony further shows that there was a wash place near the Bowie house where a wash tub, containing water, a rub board and some clothes were found, and there were signs on the ground including spots of blood showing that something had been dragged from the direction of the wash place toward the house.

Albert Bowie testified that about 4 p. m., the appellant and Aunt Sallie drove their car in front of the Bowie home; that his father and mother (Mathew and Preatha) were standing at the wash place; that the appellant shot his father and then his mother; that they pulled them into the house, and appellant shot his mother in the back in the house; that appellant opened a purse which he found in the bedroom, removed some money and put it in his pocket; that appellant took the rifle, and he (Albert), the appellant and Aunt Sallie left in the car; and after they got to Houston the officers pursued them until the car was wrecked, killing

Aunt Sallie, and the appellant ran from the scene.

The appellant did not testify or call any fact witness but introduced the application for guardianship alleging that he was twenty-one years of age, and "mentally handicapped or a non compos mentis" and eligible for state aid and the order appointing the guardian.

■ Error is urged on the ground that "The Court, over appellant's request, failed to examine the witness Albert Bowie, a person who had been previously adjudged non compos mentis, on voir dire, to test his competency before permitting him to testify before the jury."

At the time the state called and began its examination of the witness Albert Bowie, the appellant objected to any testimony from Bowie on the ground that he had been adjudged mentally incompetent, and was not able to understand the nature and consequences of an oath.

The court tendered the witness for examination on voir dire by appellant's counsel which was declined. The objection was overruled.

The record shows that the trial court had observed the witness Bowie, sitting in the courtroom, during five days of jury selection and during recesses had heard him talking with other persons; that immediately before Bowie took the witness stand the trial court engaged him in conversation for approximately ten minutes. Based on these facts and circumstances, the court concluded that Bowie was a competent witness.

After the witness Bowie had testified and the state had rested its case in chief, the appellant introduced in evidence the order appointing a guardian for Albert Bowie, a non compos mentis. The application for guardianship recites that Bowie was then twenty-one years of age, and was eligible to receive assistance from the state. The evidence shows that the witness Bowie was

twenty-seven years of age at the time of this trial.

In rebuttal the state called a county commissioner who had known Albert Bowie all of his life, and next called his sister, Mareyjoyce, age 36, who has a master's degree in sociology and had completed all her work in that field for a Doctor of Philosophy except her dissertation, and they testified that Albert had a speech impediment, knew to tell the truth, and was able to relate the things he had seen.

Art. 708, C.C.P., provides that only insane persons who are in an insane condition of mind at the time when they are offered as a witness, or who were in that condition when the events happened of which they are called to testify, are incompetent. Saucier v. State, 156 Tex.Cr.R. 301, 235 S.W.2d 903.

■ A prior judgment and commitment for lunacy does not in itself disqualify the witness. Downing v. State, 113 Tex.Cr. App. 235, 20 S.W.2d 202; Singleton v. State, 124 S.W. 92; Foster v. State, 142 Tex.Cr.R. 615, 155 S.W.2d 938; Ebers v. State, 129 Tex.Cr.R. 287, 86 S.W.2d 761; and Flannery v. State, Tex.Cr.App., 216 S.W.2d 980.

The contention urged pertaining to the competency of the witness Bowie does not reveal error. Flannery v. State, supra.

■ It is insisted that the trial court erred in placing the jury in the custody of Sheriff Humphreys of Newton County, and in refusing to instruct the sheriff not to talk to the jury, and overruled appellant's motion for mistrial based on such grounds.

Sheriff Humphreys was well acquainted with the deceaseds and they were friends. The sheriff had two deputies and a dispatcher; and the sheriff was not in the courtroom during the selection of the jury. The court instructed the sheriff not to discuss anything connected with the case with the jury but declined to instruct him not to converse with them in any manner. There is no showing that the sheriff stayed with the jury, that he took them to any meals, or that he said anything about the case to them.

The testimony shows that after Deputy Sheriff Thorpe delivered the appellant, the .22 rifle which was broken, and the $793.69 to Ranger Rogers in Houston, that Rogers left there with them about 8 a. m., going to Newton where he delivered them about 12 o'clock noon to Sheriff Humphreys. In investigating the case Sheriff Humphreys found a woman's purse and a sweater on a bed in the Bowie home. He also got some spent shells which he sent to Austin and they were returned to him; and he received information that Mathew Bowie had recently sold a number of livestock.

The nature and extent of the association of the sheriff with the jury and his testimony pertaining to the case, do not reveal such association and communication with the jury as calls for a reversal under Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424.

■ Appellant contends that the trial court erred in refusing to grant his amended motion for new trial because the jury received new evidence while they were deliberating.

In the motion and affidavit in support thereof it is alleged that the jurors talked about the failure of the appellant to testify; and that one juror stated that if the punishment assessed was less than death he could be paroled, and the resulting discussion caused one or more jurors to change their vote from life to death.

The appellant called four jurors. One stated that the failure of the appellant to testify was not mentioned, two said they did not remember it being mentioned, and one said that it was only mentioned. All four jurors said that it was discussed about the appellant being released on parole if not assessed the death penalty.

The affidavits of two jurors were introduced by the state, and they recite that they did not hear any discussions about the failure of the appellant to testify or that if he was not assessed the death penalty he could be paroled.

■ It is common knowledge that persons assessed life or a term of years in prison could become eligible for parole. Art. 781d Vernon's Ann.C.C.P. Sec. 15; Torres v. State, 169 Tex.Cr.R. 113, 331 S.W.2d 929.

The trial court did not abuse its discretion in refusing to grant the amended motion for new trial.

■ Error is urged because the trial court excluded certain testimony during the hearing on the amended motion for new trial. In the absence of a showing of what the testimony would have been if admitted, this contention cannot be appraised.

■ It is contended that the trial court erred in permitting Dr. Love to testify concerning the autopsy he performed upon the body of Preatha Bowie because he had no independent recollection and could recall the autopsy only by referring to notes which he did not make and which had been in the custody of another witness for several months.

The evidence reveals that while Dr. Love performed the autopsy he asked Texas Ranger Clark to take notes for him which Ranger Clark did as the findings were made and given to him. The correctness of the notes are not challenged. No objections were made to Dr. Love's testimony during his direct examination on the ground here urged. The objection during cross-examination was to Dr. Love's testimony in its entirety. He gave considerable testimony which did not depend upon said notes. The objection to the whole when parts are admissible does not present error. 56 Tex.Jur. (2) 510, Sec. 165; Adams v. State, 158 Tex.Cr.R. 414, 256 S.W.2d 406.

■ Appellant contends that the failure of the state to disprove that the cut on the deceased's head was not the cause of her death entitled him to a reversal.

There were no bullets in the head, the skull was not fractured and it was in a normal condition except for a cut about two and one-half inches long in the top of the head.

The unexplained cause of the cut on the head, alone, in light of the record does not call for a reversal. There were no objections to the court's charge or requested charges to the effect that if the cause of death was due to the cut or if another inflicted the cut which caused death to acquit. This contention reveals no error.

■ The evidence is sufficient to support the conviction.

The judgment is affirmed.

Opinion approved by the Court.

## AMENDED OPINION ON APPELLANT'S MOTION FOR REHEARING

McDONALD, Presiding Judge.

Appellant re-urges the contention that Sheriff Humphreys' association with the jury constituted a denial of due process of law and requires a reversal of the conviction, under the decision in Turner v. State of Louisiana, supra.

In his motion, he insists that any communication with the jury by the sheriff was in violation of Art. 671, Vernon's Ann. C.C.P., and that under the decisions of this court there was a presumption of injury which was not rebutted by the state.

He also insists that the sheriff's association with the jury presents reversible error under the decision of this court in Stecher v. State, Tex.Cr.App., 373 S.W.2d 255.

We have again reviewed the record in the light of such contentions, and remain convinced that no reversible error is shown.

The sheriff was not an unauthorized person under the provisions of Art. 671, supra. No presumption of injury would arise from his association with the jury. Gandy v. State, Tex.Cr.App., 140 S.W.2d 182; Holder v. State, 140 Tex.Cr.R. 55, 143 S.W.2d 613.

Stecher v. State, supra, involved a communication between the official court bailiff and the jury in which the bailiff answered a question propounded by the jurors. The communication in that case was an unauthorized instruction to the jury and constituted error. No such facts are presented in the case at bar.

We remain convinced that, under the authorities cited in our original opinion, the court did not err in permitting the witness Albert Bowie to testify, over appellant's objection, that he was an incompetent.

The motion for rehearing is overruled.